David W. MOXLEY, et al., Plaintiffs,

v.

The TOWN OF WALKERSVILLE,
et al., Defendants.

Civil Action No. RDB 08–1763.

United States District Court,
D. Maryland.

March 6, 2009.

 Roman P. Storzer, Storzer and Greene, Washington, DC, Andrew Howard Baida, Benjamin Rosenberg, Caroline L. Hecker, Rosenberg Martin Greenberg LLP, Baltimore, MD, for Plaintiffs.

Daniel Karp, Karpinski Colaresi and Karp PA, Baltimore, MD, Robert Richard McGill, Law Office of Robert McGill, Walkersville, MD, for Defendants.

## MEMORANDUM OPINION

RICHARD D. BENNETT, District Judge.

Plaintiff David W. Moxley ("Moxley") and various other corporate entities, including (1) House Tract, LLC, (2) Farm Tract, LLC, (3) Federal 1781, LLC, (4) House Tract Holding, LLC, and (5) Eco Development, Inc. (collectively "Plaintiffs"), own a 224–acre parcel of land located at 8939 Woodsboro Pike in the Town of Walkersville, Maryland, known by the parties in this lawsuit as the Moxley Farm. On September 7, 2007, Plaintiffs reached agreement to sell the Moxley Farm to the Ahmadiyya Movement of Islam, Inc., a corporation representing the Ahmadiyya Muslim Community ("AMC").[1] The AMC intended to use the Moxley Farm as a place of worship and residence for its imam, as well as to hold an annual three-day religious event called the Jalsa Salana. Plaintiffs' seventeen-count Amended Complaint alleges that the sale of the Moxley Farm to the AMC was blocked by government officials and private citizens in a concerted effort motivated by anti-Muslim hostility.

Plaintiffs have named a series of government entities and public officials as Defendants, including (1) the Town of Walkersville, (2) Burgess Ralph Whitmore, (3) Town Commissioners Russell Winch, Donald W. Schildt, Chad Weddle, and Roger Eyler, (4) the Town of Walkersville Board of Appeals, and (5) the Board of Appeals'

members, Dan Thomas, Vaughn Zimmerman and Harold Roderuck (collectively the "Government Defendants"). In addition to the Government Defendants, Plaintiff have filed this case against Citizens for Walkersville, LLC, a Maryland limited liability company, and its President, Ed Marino, and Vice President, Steve Berryman (collectively the "Private Defendants"). All Defendants are named in all counts, and the individual Government Defendants are sued in both their official and personal capacities.

Plaintiffs claim that their rights have been violated under the First and Fourteenth Amendments to the United States Constitution (by way of 42 U.S.C. § 1983), the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, 42 U.S.C. §§ 1981, 1982, and 1985(3), and Articles 24 (equal protection) and 36 (freedom of religion) of the Maryland Declaration of Rights. Additionally, Plaintiffs have asserted a state law judicial review claim under Md.Code, Art. 66B, § 4.08, and a common law claim for tortious interference with contractual and prospective business relations.

A hearing was conducted on Friday, February 27, 2009 to discuss the two pending motions before this Court: (1) the Government Defendants' Partial Motion to Dismiss (Paper No. 14); and (2) the Private Defendants' Motion to Dismiss (Paper No. 15).[2] The Government Defendants' Partial Motion to Dismiss seeks to have this case narrowed significantly, but not entirely, and the Private Defendants' Motion to Dismiss seeks dismissal of all

---

1. The AMC is not a party to this action.

2. The parties acknowledged at the hearing that the Plaintiffs' Motion to Strike Amended Answer to Complaint (Paper No. 30) is now MOOT.

Furthermore, counsel for the Government Defendants indicated at the hearing that there is presently no challenge to the Plaintiffs' standing to bring this action.

claims. For the reasons that follow, the Government Defendants' Partial Motion to Dismiss is GRANTED IN PART and DENIED IN PART, although Plaintiffs' case against the Government Defendants remains largely intact. Furthermore, the Private Defendants Motion to Dismiss is DENIED.

## BACKGROUND

Because this Court is duty bound at this stage in the proceedings to accept all well-pleaded allegations as true, this background is taken almost entirely from Plaintiffs' Amended Complaint. Plaintiffs are collectively the owners of the Moxley Farm, located at 8939 Woodsboro Pike, Town of Walkersville, Maryland, and Plaintiff Moxley and his family reside at the Moxley Farm. Defendant Ralph Whitmore is the Burgess of the Town of Walkersville, and Defendants Russell Winch, Donald Schildt, Chad Weddle and Roger Eyler are the Commissioners of the Town of Walkersville. Defendants Dan Thomas, Vaughn Zimmerman, and Harold Roderuck comprise the Town of Walkersville Board of Appeals, which is authorized to hear and decide applications for special exception land uses. Citizens for Walkersville is a limited liability company in Maryland, formed allegedly for the sole purpose of preventing the Ahmadiyya Muslim Community ("AMC") from using the Moxley Farm. Defendant Ed Marino is the registered agent and President of Citizens for Walkersville, and Defendant Steve Berryman is the Vice President.

The AMC is a Muslim religious community that was founded in 1889 and that presently includes approximately 15,000 members and 45 mosques in the United States. Its members are of Southeast Asian, Pakistani or East Indian descent, and they have immigrated to the United Stated to avoid religious persecution. The AMC purchased the Moxley Farm for religious purposes only—they intended to use the property to build a mosque for approximately 20 local families, as a residence for its imam and a groundskeeper, and as the site for its annual three-day religious event, the Jalsa Salana. Plaintiffs allege that the Moxley Farm would have remained largely bucolic, as only 6.7% of the Moxley Farm would be used for the aforementioned purposes for 362 days of the year, and an additional 26.7% would be used for temporary tents and parking during the annual three-day religious event.

The Town of Walkersville is located in Frederick County, approximately one-half mile from the City of Frederick. The Moxley Farm is located in the Town's agricultural zoning district. At the time the AMC contracted to purchase the Moxley Farm, the Town of Walkersville permitted places of worship and recreational facilities in the agricultural zoning district through the use of special exceptions. Special exceptions are governed by Walkersville Code § 88–64(A) through (N), which provides several discretionary factors to be applied by the by the Board of Appeals in deciding whether to grant or deny a special exception application.

On August 20, 2007, the AMC publicly disclosed its intention to build a mosque on the Moxley Farm. Two days later, on August 22, 2007, Defendant Weddle, a Town Commissioner, introduced an amendment to the zoning ordinance to prohibit places of worship in the agricultural zoning district (the "Weddle Amendment").

On September 7, 2007, while the Weddle Amendment was still pending, the AMC filed a petition for a special exception under Walkersville Code § 88–24.3 to establish a place of worship with an ancillary multi-purpose recreational facility on the Moxley Farm. The AMC retained various land use professionals (in the fields of traffic engineering, civil engineering, land planning, fire and rescue safety, architecture, and real estate appraisal) to develop

a plan that would satisfy public health, safety and welfare issues. The AMC commissioned an examination of traffic patterns for its proposed use, which found that any impact on local traffic would be minimal for 362 days per year, and would not be significant even during the Jalsa Salana event.

A Staff Analysis and Report and Supplemental Staff Comments (the "Staff Report") prepared by the Town Planning and Zoning Administrator Susan Hauver concluded that the AMC's petition listed many accessory facilities and uses commonly associated with places of worship, including, *inter alia,* "conferences," "concerts," "community outreach events," "company picnics," and "carnivals." The Staff Report stated that "[l]arge scale, outdoor and/or national events are not prohibited" under the Walkersville Code, and that "the applicant's proposal to maintain a large amount of open space and to lease the majority of the property for agricultural use [is] consistent with the policies and goals of the [a]gricultural designation on the plan."

On October 13, 2007, one month after the application was filed, Private Defendants Marino and Berryman are alleged to have held a "secret meeting" at Creamery Park in Walkersville to discuss strategies in preventing the AMC's purchase of the Moxley Farm. Three of the Town Commissioners (Defendants Winch, Schildt, and Weddle) allegedly attended this meeting. Defendant Berryman, acting as a spokesman for Citizens of Walkersville, stated that the "[Citizens of Walkersville has] connections to the Burgess, the [Town Commissioners], the [Appeals Board], [p]olice, [f]ire, [r]escue, [m]edia, [r]etirement homes, GVAA, the City of Frederick, and more." Commissioner Weddle, a promi-

nent member of the allegedly conspiracy, acted as a moderator and gave "talking points" to use against the AMC and told the Private Defendants that following the points would avoid violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Commissioner Weddle discussed his proposed Weddle Amendment and advised the Private Defendants about how to approach the public hearings on the AMC's petition, including refraining from using "terms like Muslim, those individuals, religion etc.," and how many people should testify. Commissioner Weddle then offered $500 to the Private Defendants to pursue the goal of "beat[ing] the Muslims." A list of recommended attorneys was given to the Private Defendants, and public documents (including the AMC's application for a special exception) were removed from public offices and brought to the meeting for use by the Private Defendants. Commissioner Winch also spoke to the group for 25 minutes, explaining that he was concerned that other members of the AMC would move to the Moxley Farm and could thereby become politically active in the Town of Walkersville.[3]

Over the next several months, Plaintiffs allege that the Defendants embarked on a concerted propaganda campaign intended to prevent the AMC from being approved for a special exception. Private Defendants Marino and Berryman made numerous false statements about AMC and its proposed use of the Moxley Farm, including describing AMC as "radical religious extremists," calling their application "willfully deceiving," suggesting that they "strangle children due to dress code violations," and claiming that they intended to build a "huge settlement" by "occupying

---

**3.** After the meeting ended, Commissioner Weddle told the Private Defendants that "he couldn't meet openly with [Citizens for Walkersville] anymore until after November 1st, as it would be a conflict of interest." (November 1, 2007 was the original hearing date on the AMC's application.)

new land, especially in Walkersville, MD." Defendant Marino is alleged to have stated that "[w]e must be diligent in protecting the lifestyle and environment we have in Walkersville." Defendant Berryman is alleged to have stated that "I'm trying to keep Frederick free of people who don't belong." Defendant Berryman also posted a statement on the internet that declared "I will not be '[d]eceived' by the Muslim Ahmadiyya Group's efforts to infiltrate Frederick County. Neither should you!," and also warned that the AMC's use of the Moxley Farm could be used to spread radical Islamic ideology. The Private Defendants also set up internet sites, hired "experts," and made statements in newspapers and blogs.

Government Defendant Whitmore, the Town's Burgess, is also alleged to have been quoted at length in various local media outlets as saying, *inter alia,* the following: "Muslims are a whole different culture from us, . . . . The situation with the Muslims is a touchy worldwide situation, so people are antsy over that"; "But for the most part people, I don't know if they're dramatically upset, but they are definitely concerned, I—like me, I am concerned myself, . . . I understand the world climate, I understand what's going on. I do remember . . . 9/11 very vividly so it's only that thing sticks in your mind"; "There's a lot of animosity. Not, that's not a good word. There's a lot of, shall we say, apprehension" about the AMC's application; "It's a different culture moving

into town, a culture we're not used to"; "This town is not very diversified. You know what I mean? We're sitting back here off the radar scope and living in our little piece of heaven"; "Let me be sure I understand, if this is done [*i.e.* denying the special exception] the Muslims are gone, right?"

The Board of Appeals held hearings on the AMC's petition on eleven occasions through January and February 2008. Written and verbal testimony, exhibits, and other evidence was offered to the Board of Appeals by the AMC, the Plaintiffs, "recognized organizations," and by members of the public. The Moxley Farm met the lot and yard dimensions for a special exception in the agricultural zoning district for both a place of worship and a recreational facility. Nonetheless, the three-member Board of Appeals voted unanimously to deny the AMC's petition,[4] finding that the proposed principal purpose for which the property and buildings were intended was an "annual convention and regional and national conferences and special events, which are not recognized special exception uses in the [a]gricultural zone under the Zoning Ordinance." By doing so, the Board of Appeals rejected the AMC's claim that the Moxley Farm would be used principally for daily religious use. The Board of Appeals concluded that "the Applicant's Petition does not qualify for the requested special exception for a Place of Worship and ancillary Recreational Facility."[5]

---

**4.** The Board's written opinion explaining its reasons for denying the AMC's petition was not issued until months later, on June 5, 2008.

**5.** During the same general time period, the Board of Appeals granted a special exception for the Banner School in the agricultural zoning district, which Plaintiffs allege requires a larger facility (55,000 sq. ft.) on a smaller parcel of land (28–acre parcel). The special exception was granted despite the fact that

the County's staff recommended denying the Banner School's application because it was "not within a 20 year water & sewer service area." Commissioner Weddle testified at the hearing in favor of granting the Banner School's application, stating that the significant traffic and queuing of the cars dropping off students would increase safety because cars would be forced to move more slowly. Plaintiffs claim that the approval for a special exception for the Banner School evidences

The Board of Appeals supported its finding with several conclusions that Plaintiffs allege were either irrational or contrary to the weight of the evidence.

- The Board concluded that the AMC's proposed use of the Moxley Farm would be more appropriately located on smaller country roads (and further away from a state highway), but the Board also concluded that smaller country roads "are not suitable for the type of traffic the Applicant is proposing."

- The Board found that increased local traffic caused by the AMC's use of the Moxley Farm would "jeopardize the lives of people in the neighborhood," even though Plaintiffs allege that the evidence demonstrated that the AMC's use of the Moxley Farm would generate very little additional traffic.

- The Board concluded that the AMC would require use of public water and sewer systems, and that "public water and sewer are not available at this time." Plaintiffs claim, however, that they demonstrated that the Moxley Farm has a private well and septic capacity and does not require connection to public water and sewer systems.

- The Board found that there would be a negative impact on the fire, ambulance, and rescue services, but Plaintiffs argue that such services are located directly across the highway from the Moxley Farm.

Moreover, the Plaintiffs allege that the Board of Appeals did not consider any less restrictive means to achieve its interests, and that the Board of Appeals refused to hear or consider evidence related to RLUIPA.

After the AMC's Petition was denied, Commissioner Winch published a statement on the internet that stated that "[t]he Zoning Board of Appeals voted unanimously tonight to deny the AMC's application in FULL!!! Its [sic] been quite a long road, and much thanks should go out to all the residents who attended the long meetings, contributed to the cause, and supported the Citizens for Walkersville's ... efforts to mount a fantastic defense in support of Walkersville." The statement was signed as "Walkersville Planning & Zoning Commission member, Walkersville Commissioner."

On March 3, 2008, the AMC terminated its contract of sale with Plaintiffs solely because of the Board of Appeals' denial of the AMC's requested special exception.

The Weddle Amendment, introduced after the AMC stated its intention to purchase the Moxley Farm, was eventually enacted by the Commissioners as Ordinance 2008–01 on April 9, 2008. Consequently, places of worship are no longer permitted in the agricultural zoning district, even by way of a special exception. Plaintiffs allege that the motivation behind the Commissioners' adoption of the Weddle Amendment was religious and racial animus to prevent the AMC's use of the Moxley Farm.[6]

---

the discriminatory motive underlying the denial of the AMC's petition.

Plaintiffs also claim that the AMC's Jalsa Salana event was treated differently and worse than other large gatherings in Walkersville. Plaintiffs contend that other religious institutions in Walkersville hold large annual gatherings such as carnivals, auctions, flea markets and car shows, and that the Volunteer Fire Department (chaired by Defendant Zimmerman) holds an annual "Carnival"

about 200 yards from the Moxley Farm that has much greater impact on traffic, noise and parking, and that lasts for six days and draws over 23,000 people.

**6.** Based on representations made to this Court by Plaintiffs' counsel at the February 27, 2009 hearing, Ordinance 2008–01 also blocked the special exception previously granted to the Banner School (which apparently qualifies as a place of worship under the provision). It appears, again from represen-

Plaintiffs originally filed this action against the Government Defendants on July 7, 2008, but they filed an Amended Complaint adding the Private Defendants (Paper No. 6) on August 5, 2008. The Amended Complaint breaks down as follows, with all Defendants (Private and Government) being named in all seventeen counts, and with the individual Government Defendants being sued in both their official and personal capacities:

| Count | Cause of Action |
| --- | --- |
| Count I | 42 U.S.C. § 1983, First Amendment, Free Exercise Clause |
| Count II | 42 U.S.C. § 1983, First Amendment, Establishment Clause |
| Count III | 42 U.S.C. § 1983, Equal Protection Clause |
| Count IV | Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc(b)(2), "Nondiscrimination" |
| Count V | RLUIPA, 42 U.S.C. § 2000cc(b)(1), "Equal Terms" |
| Count VI | RLUIPA, 42 U.S.C. § 2000cc(b)(3)(A), "Exclusions and Limits" |
| Count VII | RLUIPA, 42 U.S.C. § 2000cc(b)(3)(B), "Exclusions and Limits" |
| Count VIII | RLUIPA, 42 U.S.C. § 2000cc(a), "Substantial Burdens" |
| Count IX | Maryland Declaration of Rights, Article 24 (equal protection) |
| Count X | Maryland Declaration of Rights, Article 36 (freedom of religion) |
| Count XI | Fair Housing Act, 42 U.S.C. § 3604, Discrimination in Sale of Housing |
| Count XII | Fair Housing Act, 42 U.S.C. § 3617, Interference, coercion, or intimidation |
| Count XIII | 42 U.S.C. § 1981, Equal Rights Under the Law |
| Count XIV | 42 U.S.C. § 1982, Property Rights of Citizens |
| Count XV | 42 U.S.C. § 1985(3), Conspiracy to Interfere with Civil Rights |
| Count XVI | Md. Code, Art. 66B, § 4.08, State Law Judicial Review Claim |
| Count XVII | Tortious Interference with Contractual and Prospective Business Relations |

The Government Defendants filed their Partial Motion to Dismiss (Paper No. 14) on September 16, 2008, and the Private Defendants filed their Motion to Dismiss (Paper No. 15) on September 24, 2008. Both motions are fully briefed and are ripe for disposition.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999). Therefore, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir.1997). A complaint must meet the "simplified pleading standard" of Rule 8(a)(2), *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a).

Although Rule 8(a)(2) requires only a "short and plain statement," a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" in order to

tations by Plaintiffs' counsel, that Ordinance 2008–01 either already has been or will imminently be repealed in order to clear the way for the Banner School to continue construction in the agricultural zoning district.

survive a motion to dismiss. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The factual allegations contained in a complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* Thus, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955.

## DISCUSSION

### I. The Government Defendants' Partial Motion to Dismiss (Paper No. 14)

Although the Government Defendants' Partial Motion to Dismiss represents a reasoned, targeted approach aimed at narrowing the claims and legal issues that will proceed to discovery, Plaintiffs' Amended Complaint almost entirely survives the permissive pleading standard applied at this stage. The Government Defendants' arguments will be addressed in turn.

### A. Governmental Immunity and Punitive Damages

The Government Defendants argue that the Town of Walkersville is entitled to governmental immunity under the Local Government Tort Claims Act ("LGTCA") as to the common law tortious interference with contractual and prospective business relations claim asserted in Count XVII because Plaintiffs' Amended Complaint may not proceed directly against the municipality. *See Livesay v. Baltimore County,* 384 Md. 1, 862 A.2d 33, 44 (2004) ("Section 5–303(d) makes clear that the

[LGTCA] does not waive the County's common law governmental immunity in any extent more broad than its duty to indemnify employees. We have previously made clear that 'the LGTCA does not waive governmental immunity or otherwise authorize any actions directly against local governments.'" (quoting *Williams v. Maynard,* 359 Md. 379, 754 A.2d 379, 388 (2000))). At the hearing on February 27, 2009, Plaintiffs recognized that they could not pursue a direct action against the Town of Walkersville. Therefore, as to Count XVII, the Town of Walkersville will be DISMISSED as a Defendant.[7]

Also at the hearing, the parties agreed that punitive damages may not be assessed against the Town of Walkersville or the individual Government Defendants in their official capacities. Therefore, to the extent that Plaintiffs' Amended Complaint seeks punitive damages against Town of Walkersville or the individual Government Defendants in their official capacities, those claims to relief are DISMISSED.

As to these two issues, therefore, the Government Defendants' Partial Motion to Dismiss is GRANTED.

### B. The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA")

Plaintiffs' Amended Complaint alleges violations of five separate RLUIPA provisions—42 U.S.C. § 2000cc(b)(2) (Nondiscrimination), 42 U.S.C. § 2000cc(b)(1) (Equal Terms), 42 U.S.C. § 2000cc(b)(3)(A) (Exclusions and Limits), 42 U.S.C. § 2000cc(b)(3)(B) (Exclusions

---

7. Even though the Town of Walkersville is itself dismissed from Count XVII, it may eventually be vicariously liable in this case for a monetary judgment against individual Government Defendants in their official capacities. *See, e.g., Ashton v. Brown,* 339 Md. 70, 660 A.2d 447, 466, 473–74 (1995) (stating that

"[a]s long as the local government employee is acting in the scope of his employment and without malice, the local government is required to pay the judgment against the employee to the extent it represents compensatory damages, up to certain statutory limits").

and Limits), and 42 U.S.C. § 2000cc(a) (Substantial Burdens). These claims are contained in Counts IV, V, VI, VII, and VIII, respectively. The Government Defendants have moved to dismiss all of these Counts insofar as they assert personal capacity claims against the individual Government Defendants.

The language of RLUIPA appears to explicitly provide for personal capacity claims against individuals. The statute provides for a cause of action against a "government": "A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc–2(a). A "government" is defined as:

(i) a State, county, municipality, or other governmental entity created under the authority of a State;

(ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and

(iii) any other person acting *under color of State law* [.]

42 U.S.C. § 2000cc–5(4) (emphasis added). The second romanette (ii) clearly permits a suit against an individual defendant in his official capacity. The third romanette (iii) clearly signals Congress' intent to allow personal capacity suits. By stating that a "government" is an individual "acting under color of State law," Congress used the same language that the Supreme Court has long held, as a matter of black letter law, renders a government official personally liable under 42 U.S.C. § 1983. *See, e.g., American Manufacturers Mutual Insurance Co. v. Sullivan,* 526 U.S. 40, 49–

50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed *under color of state law.*" (emphasis added)).

In addition to this statutory language, Plaintiffs have argued that in *Lovelace v. Lee,* 472 F.3d 174 (4th Cir.2006), "the Fourth Circuit ... held that government officials may be liable in their individual capacities." On the contrary, the Fourth Circuit explicitly did *not* make such a holding. Although the court assumed without discussion or analysis that a personal capacity suit could proceed under RLUIPA,[8] it made clear that "[the defendant] has not raised (*and we leave open*) the issue of whether RLUIPA allows damages against state and local officials sued in their individual [*i.e.* personal] capacities." *Id.* at 197 n. 7 (emphasis added). The court added that "[d]istrict courts are split on this question." *Id.*

A recent case from the United States Court of Appeals for the Eleventh Circuit, *Smith v. Allen,* 502 F.3d 1255 (11th Cir. 2007), which was not cited by the parties, represents the lone circuit decision to directly confront this issue. The Eleventh Circuit determined, after a thorough discussion, that Congress was without the power to provide for personal capacity suits for monetary damages. The court explained that "[a] flaw with [the argument that RLUIPA permits personal capacity suits], however, is that section 3 of RLUIPA was enacted pursuant to Con-

---

**8.** Specifically, the Fourth Circuit explained that "[t]he defendants meet the definition of 'government,' and they arguably imposed a substantial burden without compelling justification when they barred [the plaintiff] from Ramadan observance and other religious exercise." *Lovelace,* 472 F.3d at 194. More-

over, the court stated that in order "[t]o hold the defendants liable as individuals, [the plaintiff] must further prove that they acted with the requisite intent," which the court determined includes (but does not necessarily require) "intentional conduct because that is what the Free Exercise Clause reaches." *Id.*

gress' Spending Power under Article I of the Constitution," and that "the Spending Power cannot be used to subject individual defendants, such as state employees, to individual liability in a private cause of action." *Smith,* 502 F.3d at 1272–74. Consequently, "Congress cannot use its Spending Power to subject a non-recipient of federal funds, including a state official acting [in] his or her individual [*i.e.* personal] capacity, to private liability for monetary damages." *Id.* at 1274; *see also Pugh v. Goord,* 571 F.Supp.2d 477, 507 (S.D.N.Y.2008) (finding that "the reasoning in *Smith* to be convincing, and conclud[ing] that RLUIPA does not provide for the availability of money damages against defendants in their individual capacities"). A recent district court case from this circuit has followed the *Smith* decision and concluded that "defendants cannot be sued in their individual capacities under the RLUIPA." *See Malik v. Ozmint,* 8:07–387–RBH–BHH, 2008 WL 701517, at *12–13, 2008 U.S. Dist. LEXIS 33904, at *34–36 (D.S.C. February 13, 2008).

■ This Court agrees with the rationale in *Smith,* and likewise concludes that a personal capacity suit may not proceed against an individual defendant under RLUIPA. Therefore, the Government Defendants' Partial Motion to Dismiss is GRANTED insofar as Plaintiffs have sued the individual Government Defendants in their personal capacities under RLUIPA in Counts IV, V, VI, VII, and VIII. Plaintiffs are permitted to pursue official capacity claims against the individual Government Defendants under RLUIPA in Counts IV, V, VI, VII, and VIII.[9]

## C. Absolute Legislative Immunity

Plaintiffs' Amended Complaint requests relief against Burgess Whitmore and Commissioners Winch, Schildt, Weddle and Eyler in their persona and official capacities based on their adoption of Ordinance 2008–01. The Amended Complaint also requests relief against Defendants Thomas, Zimmerman, and Roderuck, members of the Board of Appeals, based on the denial of AMC's application for a special exception.[10] Aside from Plaintiffs' personal capacity claims under RLUIPA (which have been dismissed), the Government Defendants have moved to dismiss all claims, both official and personal, on the basis of absolute legislative immunity.

■ Initially, this Court notes that the doctrine of absolute legislative immunity serves as a defense only to personal capacity claims—it provides no defense to official capacity claims, as such claims are merely another way of suing a municipality, such as the Town of Walkersville. In *Robinson v. Bd. of County Comm'rs,* No. RDB–07–1903, 2008 WL 2484936, 2008 U.S. Dist. LEXIS 54911 (D.Md. June 19, 2008), this Court explained as follows:

Proper application of legislative immunity in damages actions requires a court to

---

**9.** Although this Court does not presently decide the issue, it appears that Plaintiffs will not be able to recover monetary damages as "appropriate relief" under RLUIPA against the individual Government Defendants in their official capacities. In *Lovelace,* 472 F.3d at 193–94, the Fourth Circuit relied on a separate opinion issued on the same day, *Madison v. Commonwealth of Virginia,* 474 F.3d 118 (4th Cir.2006), to conclude that monetary damages are not available against defendants in their official capacities under RLUIPA because "RLUIPA's 'appropriate relief against a government language' falls short of the unequivocal textual expression necessary to waive State immunity from suits for damages." *Id.* at 131–32.

**10.** The Amended Complaint alleges that the Board of Appeals is a legislative body: "The ... Board of Appeals is the municipal *legislative* body authorized ... to hear and decide special exceptions to the terms of the Town of Walkersville's zoning ordinances."

make a distinction between official and personal capacity, as the Commissioners have been sued in both capacities. When an individual is sued in his official capacity, the suit is essentially against the governmental entity. In contrast, personal capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." While an official can seek immunity from suits against him in his personal capacity, "[t]he only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." Thus, the Commissioners can only seek legislative immunity from liability in their *personal* capacities.

*Id.* at *6, 2008 U.S. Dist. LEXIS 54911 at *19–20 (citations omitted and emphasis in original). Therefore, the defense of absolute legislative immunity does not bar any of Plaintiffs' official capacity claims.

■■■ As to the claims against the individual Government Defendants in their personal capacities, the parties agreed at the hearing that the United States Court of Appeals' decision in *Alexander v. Holden,* 66 F.3d 62 (4th Cir.1995), controlled the outcome in this case. In *Alexander,* the Fourth Circuit explained that "[l]egislative immunity only attaches to legislative actions. Executive and administrative actions are not protected. Local government bodies often undertake actions in different capacities, including executive, administrative, legislative, and even judicial." *Id.* at 65 (citations omitted); *see also Jemal's Fairfield Farms, LLC v. Prince George's County,* 319 F.Supp.2d 618, 632 (D.Md.2004) ("[M]embers of local governmental bodies are entitled to absolute legislative immunity from claims against them arising out of their actions in a 'legislative capacity[,]'" such as "proposing, discussing, and voting on proposed legislation . . . ." (citations omitted)). "To

ascertain whether an act is legislative or administrative, the Fourth Circuit has adopted a two-step analysis focusing on: 1) 'the nature of facts used to reach . . . decision'; and 2) 'the particularity of the impact' of the state action." *Pathways Psychosocial v. Town of Leonardtown,* 133 F.Supp.2d 772, 794 (D.Md.2001) (citing *Alexander,* 66 F.3d at 66). Moreover, it is well established that a legislator's motives are irrelevant to whether legislative immunity applies. *See Bogan v. Scott–Harris,* 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) ("Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.")

■■ The Government Defendants have argued that legislative immunity applies to the adoption of Ordinance 2008–01 because zoning ordinances create prospective, general community policy regarding a zoning district, and, in any event, the law was never directly applied to the AMC. Based on the allegations in this case, however, this Court cannot conclude at this stage in the proceedings that this particular zoning ordinance constituted a legislative act entitling the Burgess and Commissioners to absolute legislative immunity.

First, Plaintiffs have adequately alleged that Ordinance 2008–01 had no purpose other than to prevent the sale of the Moxley Farm to the AMC. The ordinance was proposed as the Weddle Amendment just two days after the AMC publicly disclosed its intention to build a mosque on the Moxley Farm. Moreover, after the AMC was denied a special exception, it now appears that Ordinance 2008–01 either has or will be repealed so that the only other entity to which it ever applied (*i.e.* the Banner School) will no longer be subject to its restrictions. Thus, facts may develop that establish that this legislation " 'relates to particular individuals,' " and that it "impacts specific individuals or 'singles out

specifiable individuals.'" *Alexander*, 66 F.3d at 66 (citing *Acevedo–Cordero v. Cordero–Santiago*, 958 F.2d 20, 23 (1st Cir.1992)).

Second, the enactment of Ordinance 2008–01 is but one concrete component of the totality of Plaintiffs' allegations—indeed, Plaintiffs' Amended Complaint is rife with allegations that the Burgess and Commissioners conspired with the Private Defendants to prohibit AMC from being able to use the Moxley Farm. *See Carver v. Foerster*, 102 F.3d 96, 102 (3d Cir.1996) ("[T]he doctrine of absolute immunity, as it pertains to local legislators, does not shield executive officials from liability for a course of conduct taken prior to and independent of legislative action, even if those officials were simultaneously members of the local legislative body that ratified the conduct.").

█ As to the denial of the special exception, absolute legislative immunity cannot be applied as a matter of law at this stage in the proceedings to dismiss the Plaintiffs' claims. After receiving an application for a special exception, the Board of Appeals is authorized under section 88–64 of the Walkersville Zoning Code to "study the specific property involved," "hold a public hearing, consider all testimony and data submitted," and give consideration to fourteen factors prior to rendering a decision that affects the applicant. *See also* Md. Ann.Code, Art. 66B, §§ 4.07(d)(2) (authorizing the Board of Appeals to "[h]ear and decide special exceptions to the terms of an ordinance on which the board is required to pass under the ordinance"). Therefore, even more so than in the context of Ordinance 2008–01, the denial of the AMC's special exception application is alleged to have "single[d] out specifiable individuals." *Alexander*, 66 F.3d at 66 (citing *Acevedo–Cordero*, 958 F.2d at 23).

Therefore, at this stage of the proceedings, Plaintiffs' allegations are sufficiently precise to defeat the Government Defendants' claim of absolute legislative immunity. It is worth highlighting, however, that the doctrine of legislative immunity is not uniquely asserted on motions to dismiss. This case will have to await further factual development during pretrial discovery in order to establish a sufficient record to determine the applicability of the doctrine of absolute legislative immunity. In the meantime, the Government Defendants' Partial Motion to Dismiss on the ground that they are entitled to absolute legislative immunity is DENIED.

### D. Failure to State Claim under Rule 12(b)(6)

The Government Defendants have argued—on both a specific and very general basis—that the individual Government Defendants are entitled to dismissal because Plaintiffs' Amended Complaint fails to state a claim against them.

#### 1. 42 U.S.C. § 1985(3)

█ The Government Defendants have specifically devoted a section of their brief to Count XV of Plaintiffs' Amended Complaint, which asserts a cause of action under 42 U.S.C. § 1985(3). Section 1985(3) provides that:

> If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, ...; the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). "The law is well settled that to establish a sufficient cause of action for 'conspiracy to deny equal protection of the laws' under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who

are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Buschi v. Kirven,* 775 F.2d 1240, 1257 (4th Cir.1985).

In their Amended Complaint, Plaintiffs have alleged that the Government Defendants conspired with the Private Defendants to deprive Plaintiffs and the AMC of their civil rights; that this conspiracy was based on anti-Muslim hostility; that various acts were committed in furtherance of the conspiracy, including a targeted strategy implemented through the formation of a corporate entity; and, as a result of the conspiracy, the Defendants (Private and Government) caused injury to Plaintiffs and the AMC by blocking the sale of the Moxley Farm. Specifically, the gravamen of Plaintiffs' conspiracy allegations is the October 13, 2007 meeting at Creamery Park, at which time Plaintiffs allege that Private Defendants Marino and Berryman and Commissioners Winch, Schildt, and Weddle began discussing their joint plan to prevent the AMC from purchasing the Moxley Farm.[11] As to these specific individuals, Plaintiffs' have alleged, *inter alia,* (1) that Commissioner Weddle gave "talking points" to the other Defendants and that Commissioner Winch spoke for 25 minutes, (2) that the Private Defendants were advised on how to strategically approach the public hearings on the AMC's petition, including providing a list of recommended attorneys, and (3) that Commissioner Weddle offered $500 to the Private Defendants to pursue the goal of "beat[ing] the Muslims." There are also ample allegations that Burgess Whitmore actively and publicly voiced his concerns about the AMC purchasing the Moxley Farm, and Plaintiffs allege that Burgess Whitmore also "worked behind the scenes" in furtherance of the conspiracy. He is alleged to have stated that "[l]et me be sure I understand, if this is done [*i.e.* denying the special exception] the Muslims are gone, right?" As to these Defendants, the allegations contained in the Amended Complaint are clearly sufficient to defeat the Government Defendants' Motion to Dismiss.

The Government Defendants highlight that Plaintiffs' Amended Complaint asserts no *specific* factual allegations against Commissioner Eyler or the members of the Board of Appeals (Defendants Thomas, Zimmerman, and Roderuck) involving membership in the conspiracy, other than the final, official "overt act" (*i.e.* voting on the Weddle Amendment and denying the special exception). Therefore, the Government Defendants argue that dismissal is warranted as to Defendants Eyler, Thomas, Zimmerman, and Roderuck.

Particularized allegations against Defendants Eyler, Thomas, Zimmerman, and Roderuck in relation to the alleged conspiracy are scant. However, it is alleged in the Amended Complaint that the conspiracy included the official actions taken by the Commissioners and the Board of Appeals. The clandestine nature of the conspiracy charge also makes it extremely unlikely that Plaintiffs could plead specific facts as to each and every alleged conspirator.[12] *See, e.g., Waller v. Butkovich,* 584

---

11. Because Plaintiffs' conspiracy allegations include the Private Defendants, this Court finds that the intercorporate conspiracy is inapplicable.

12. By way of example, Plaintiffs have alleged that Commissioner Weddle told the Private Defendants that "he couldn't meet openly with the citizen's group anymore until after November 1st [the original hearing date on

F.Supp. 909, 931 (M.D.N.C.1984) ("Conspiracies are by their very nature secretive, and the victims thereof are unlikely to have access to such facts before bringing suit."). Instead, Plaintiffs have alleged an overarching conspiracy between the Private and Government Defendants, beginning at the October 13, 2007 meeting and developing throughout the pendency of the AMC's application. At a minimum, Plaintiffs' argument is undergirded by Defendant Berryman's statement at the October 13, 2007 meeting that the Private Defendants had "connections" to the Burgess, the Commissioners, and the Appeals Board, which includes Defendants Eyler, Thomas, Zimmerman, and Roderuck. Therefore, despite the lack of precise allegations, Plaintiffs' Amended Complaint, taken as a whole, alleges "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

Accordingly, the Government Defendants' Partial Motion to Dismiss as to Plaintiffs' claim under 42 U.S.C. § 1985(3) is DENIED.

### 2. Remaining Counts

The Government Defendants also assert, more generally, that Plaintiffs' Amended Complaint should be dismissed in its entirety against the individual Government Defendants. The thrust of the Government Defendants' argument is that Plaintiffs' claims are based only on official government action—*i.e.* the Commissioners and the Burgess are sued because of Ordinance 2008–01, and the Board of Appeals' members are sued because of their decision to deny AMC's application for a special exception. This argument provides no legal basis (independent from the immunity arguments asserted elsewhere) for this Court to dismiss Plaintiffs' entire Amended Complaint as to the individual

Government Defendants. Moreover, the Amended Complaint clearly contains factual allegations that, if demonstrated to be true, provide a basis for relief for Plaintiffs. Therefore, the Government Defendants' Partial Motion to Dismiss on the ground that Plaintiffs' Amended Complaint fails to state a claim for which relief can be granted under Rule 12(b)(6) is DENIED.

### E. Federal and State Qualified Immunity

#### 1. Federal Qualified Immunity

█ As to the federal claims asserted in Plaintiffs' Amended Complaint (Counts I—VIII, XI—XV), the Government Defendants have argued that the doctrine of qualified immunity protects them from liability from civil damages, and thus they cannot be sued in their personal capacities.

█ Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Nonetheless, "qualified immunity ... will be upheld on a [Rule] 12(b)(6) motion only when the immunity is established on the face of the complaint," *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996), and the court must "examine the facts alleged by the plaintiff, not those asserted by the defendant." *Buonocore v. Harris*, 65 F.3d 347, 357 (4th Cir.1995).

the AMC's application], as it would be a con- flict of interest."

 The well-established two-pronged inquiry proceeds as follows:

> First, [the court] must decide "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "Next, assuming that the violation of the right is established, [the court] must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir.2002).

*Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir.2003). "The plaintiff bears the burden of proof on the first question—*i.e.*, whether a constitutional violation occurred . . . . [and][t]he defendant bears the burden of proof on the second question—*i.e.*, entitlement to qualified immunity." *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007) (internal citations omitted).

The individual Government Defendants are not entitled to the protections of qualified immunity at this early stage in the litigation. The Amended Complaint clearly lays out a sufficient groundwork to support various constitutional and statutory violations. Plaintiffs have alleged that they agreed to sell the Moxley Farm to the AMC, and that, solely because of a concerted effort between the Government and Private Defendants based on anti-Muslim hostility, the sale of the Moxley Farm fell through. Indeed, the Plaintiffs' burden under the first prong is intertwined with this Court's previous discussion on the Government Defendants' argument that the Amended Complaint fails to state a claim for which relief may be granted. To the extent that Plaintiffs have sufficiently pled constitutional and statutory violations, they have also met their burden under the first prong of the qualified immunity analysis. As to the first element, therefore, Plaintiffs have pled ample facts to demonstrate that constitutional and statutory violations occurred if the allegations are indeed accurate.

As to the second element, the Government Defendants have not met their burden of establishing that they are entitled to immunity for the alleged constitutional violations. They have not argued with any particularity that the alleged constitutional or statutory violations were not clearly established at the time they occurred, or that an objectively reasonable person would not have known that his actions violated that person's clearly established rights.

Therefore, the federal constitutional and statutory claims against the individual Government Defendants in their personal capacities will proceed to discovery, and the Government Defendants' Partial Motion to Dismiss on this ground is DENIED.

### 2. State Qualified Immunity

 The Government Defendants have moved to dismiss Count XVII (tortious interference with contractual and prospective business relations) of Plaintiffs' Amended Complaint on the grounds that the individual Government Defendants possess statutory immunity. Section 5–507(b)(1) of the Courts and Judicial Proceedings Article of the Maryland Code provides that "[a]n official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action." Md.Code Ann., Cts. & Jud. Proc. § 5–507(b)(1). The malice required to strip away statutory immunity is "actual malice." *Shoemaker v. Smith*, 353 Md. 143, 725 A.2d 549, 560 (1999). Actual malice under Maryland law means "conduct 'characterized by evil or wrongful motive, intent to injure,

knowing and deliberate wrongdoing, ill-will or fraud,'" and may be present even when "the conduct is objectively reasonable." *Lee v. Cline*, 384 Md. 245, 863 A.2d 297, 311–12 (2004) (citations omitted). In this case, the Plaintiffs' Amended Complaint quite clearly alleges that the Government Defendants, motivated by anti-Muslim bias, acted without legal justification to prevent the AMC from purchasing the Moxley Farm, thereby injuring Plaintiffs and the AMC. These allegations are sufficient to support a finding that the Government Defendants "knowing[ly] and deliberate[ly]" acted with "evil or wrongful motive." Therefore, the Government Defendants' Partial Motion to Dismiss is DENIED on statutory immunity grounds.

## F. State Law Judicial Review Claim

■ Count XVI of Plaintiffs' Amended Complaint seeks judicial review and reversal of the Board of Appeals' denial of the AMC's application for a special exception. Pursuant to Maryland Code, Article 66B, Section 4.08(a), an "appeal"[13] of a decision may be made "to the circuit court of the county" in which the administrative decision is made, and Maryland Rule 7–203(a) requires such petitions for judicial review to be filed within thirty days of the administrative action challenged. The Government Defendants have argued that this Court lacks jurisdiction with respect to this claim, which they contend could only have been brought in the Circuit Court for Frederick County.

Under 28 U.S.C. § 1367, federal district courts may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997), the Supreme Court explained that "[t]here is nothing in the text of § 1367(a) that indicates an exception to supplemental jurisdiction for claims that require on-the-record review of a state or local administrative determination." *Id.* at 169, 118 S.Ct. 523. "Instead, the statute generally confers supplemental jurisdiction over 'all other claims' in the same case or controversy as a federal question, without reference to the nature of review. Congress could of course establish an exception to supplemental jurisdiction for claims requiring deferential review of state administrative decisions, but the statute, as written, bears no such construction." *Id.* Under *City of Chicago*, therefore, this Court may exercise supplemental jurisdiction over Plaintiffs' judicial review claim because it is "part of the same case or controversy under Article III." 28 U.S.C. § 1367.

■ The procedural posture of this case, however, is slightly different from *City of Chicago* in that the plaintiffs in *City of Chicago* originally filed suit in state court prior to the case being removed to federal district court. In this case, Plaintiffs circumvented filing suit in the Circuit Court for Frederick County by initially filing this action in this Court. Because "removal ... depends on whether the case originally could have been filed in federal court," *City of Chicago*, 522 U.S. at 163, 118 S.Ct. 523, this Court finds that this procedural distinction is one without a dif-

---

13. The Maryland legislature's use of the word "appeal" to describe judicial review of an administrative action is a misnomer. *See Kim v. Comptroller of Treasury*, 350 Md. 527, 714 A.2d 176, 179 (1998) ("Although often misinterpreted to be an appeal, this Court has repeatedly emphasized that an action for judicial review of an administrative decision is an *original* action. It is *not* an appeal." (emphasis in original)).

ference. Therefore, in the interest of economy, convenience, and fairness, *see City of Chicago,* 522 U.S. at 172–73, 118 S.Ct. 523, this Court will exercise its discretion under 28 U.S.C. § 1367(c) to review the Board of Appeals' decision. *See Royal Towing, Inc. v. City of Harvey,* 350 F.Supp.2d 750, 756 (N.D.Ill.2004) (exercising supplemental jurisdiction and stating that although it was "conscious of the comity concerns that are present in this case," *"City of Chicago* expressly permits this type of 'cross-system appeal' "); *Congregation Kol Ami v. Abington Twp.,* No. 01–1919, 2004 WL 1837037, at *19, 2004 U.S. Dist. LEXIS 16397, at *63 (E.D.Pa. August 17, 2004) (exercising supplemental jurisdiction, albeit with "some reservation[ ]," over a related judicial review claim in a RLUIPA case with the same procedural posture as the instant case).

Under *City of Chicago,* therefore, this Court has the authority to review the Board of Appeals' denial of the AMC's application for a special exception, and it will exercise its supplemental jurisdiction to review the administrative decision. Thus, the Government Defendants' Partial Motion to Dismiss is DENIED as to Count XVI.

## II. The Private Defendants' Motion to Dismiss (Paper No. 15)

The Private Defendants, consisting of individual Defendants Marino and Berryman and corporate Defendant Citizens for Walkersville, have advanced two principal arguments: (1) Plaintiffs' section 1983 and RLUIPA claims (Counts I—VIII) must be dismissed because the Private Defendants cannot be liable for acting under color of state law;[14] and (2) Count XV of Plaintiffs'

Amended Complaint must be dismissed because Plaintiffs have not sufficiently pled a conspiracy under 42 U.S.C. § 1985(3).

■ First, the Private Defendants have argued that this case must be partially dismissed as to them because of the well-settled principle that "the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.' " *American Manufacturers Mutual Insurance Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). The Private Defendants' argument must fail, however, because Plaintiffs have not sued the Private Defendants for "merely private conduct"—instead, Plaintiffs seek to hold the Private Defendants accountable for actions they allegedly undertook in concert with the Government Defendants. This is a well-settled theory of liability:

> [T]to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.

*Dennis v. Sparks,* 449 U.S. 24, 28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *see also Scott v. Greenville County,* 716 F.2d 1409, 1422 (4th Cir.1983) ("It is now settled that private persons who willfully participate in joint action with a state official act under the color of law within the meaning of § 1983, notwithstanding the official's immunity from civil liability." (quoting *Black v. Bayer,* 672 F.2d 309, 318 (3d Cir.), *cert.*

---

**14.** The Private Defendants' Motion to Dismiss also sought to have Counts XI—XII (Fair Housing Act), XIII (§ 1981), XIV (§ 1982), and XV (§ 1985(3)) dismissed under the same argument, but at the hearing on February 27, 2009, counsel for the Private Defendants acknowledged that acting under color of state law is not a prerequisite for liability under these counts.

*denied,* 459 U.S. 916, 103 S.Ct. 230, 74 L.Ed.2d 182 (1982))).

Plaintiffs' Amended Complaint pleads ample facts to support their contention that the Private Defendants joined with the Government Defendants to block the sale of the Moxley Farm to the AMC. After establishing Citizens for Walkersville, an organization allegedly dedicated solely to preventing the AMC from purchasing the Moxley Farm, the Private Defendants organized and participated in the October 13, 2007 meeting. Three Town Commissioners attended that meeting, and allegedly instructed the Private Defendants in some detail about how to proceed in their joint effort to block the sale of the Moxley Farm to the AMC. Defendant Berryman stated that Citizens for Walkersville had "connections" to various local governmental organizations, including the Burgess, the Commissioners, and the Board of Appeals. After the meeting, Plaintiffs allege that the Private Defendants embarked on a propaganda campaign aimed at furthering their goal of blocking the sale of the Moxley Farm. They set up internet sites, hired "experts," and made statements in newspapers and blogs.

Based on these same allegations, Plaintiffs' Amended Complaint is clearly sufficient to support the conspiracy claim at this early stage in the litigation. As to the Private Defendants, this Court agrees with the analysis of Judge Hargrove in *Yates v. Hagerstown Lodge No. 212,* 878 F.Supp. 788 (D.Md.1995), in which he wrote as follows:

> Turning to the sufficiency of the factual allegations, this Court finds no reason to dismiss [plaintiff's] claim. Neither party disputes that Section 1985(3) mandates that an agreement among defendants, at least to the extent that they all "actually shared the same conspiratorial objective

or motive," must be shown for there to be a conspiracy ... [Plaintiff] need not, however, allege "exactly how the agreement was made—*i.e.,* ... where and when, and with what words, the agreement was formed." ... Rather, [plaintiff] is required only to allege an agreement or make averments that there was a " 'communication, consultation, cooperation, or command' from which such an agreement can be inferred.".... Last, although he must make specific allegations connecting the defendants to the injury, [plaintiff] need not plead an overt act against each defendant since a single act by one conspirator may sustain a conspiracy claim.

*Id.* at 802–03 (citations omitted). Likewise, this Court finds no reason to dismiss Plaintiffs' claim under 42 U.S.C. § 1985(3) against the Private Defendants.

Therefore, the Private Defendants' Motion to Dismiss is DENIED.

## CONCLUSION

For the reasons stated above, the Government Defendants' Partial Motion to Dismiss (Paper No. 14) is GRANTED IN PART and DENIED IN PART. It is GRANTED insofar as: (1) the Town of Walkersville is DISMISSED as to Count XVII; (2) Plaintiffs' request for punitive damages against Town of Walkersville and the individual Government Defendants in their official capacities is DISMISSED; and (3) Plaintiffs' claims under RLUIPA in Counts IV, V, VI, VII, and VIII against the individual Government Defendants in their personal capacities are DISMISSED. The remainder of the Government Defendants' Partial Motion to Dismiss is DENIED. Furthermore, the Private Defendants Motion to Dismiss (Paper No. 15) is DENIED.

This case will proceed to discovery as to the following claims against the following Defendants:

| Count | Remaining Claims and Defendants |
|---|---|
| Count I—42 U.S.C. § 1983, Free Exercise Clause | All Government and Private Defendants |
| Count II—U.S.C. § 1983, Establishment Clause | All Government and Private Defendants |
| Count III—42 U.S.C. § 1983, Equal Protection Clause | All Government and Private Defendants |
| Count IV—RLUIPA, Nondiscrimination | All official capacity claims against Government Defendants, and all Private Defendants |
| Count V—RLUIPA, Equal Terms | All official capacity claims against Government Defendants, and all Private Defendants |
| Count VI—RLUIPA, Exclusions and Limits | All official capacity claims against Government Defendants, and all Private Defendants |
| Count VII—RLUIPA, Exclusions and Limits | All official capacity claims against Government Defendants, and all Private Defendants |
| Count VIII—RLUIPA, Substantial Burdens | All official capacity claims against Government Defendants, and all Private Defendants |
| Count IX—Article 24, Equal | All Government and Private Defendants |
| Count X—Article 36, Freedom of Religion | All Government and Private Defendants |
| Count XI—Fair Housing Act, Discrimination in Sale of Housing | All Government and Private Defendants |
| Count XII—Fair Housing Act, Interference, Coercion, or Intimidation | All Government and Private Defendants |
| Count XIII—42 U.S.C. § 1981 | All Government and Private Defendants |
| Count XIV—42 U.S.C. § 1982 | All Government and Private Defendants |
| Count XV—42 U.S.C. § 1985(3) | All Government and Private Defendants |
| Count XVI—State Law Judicial Review Claim | All Government Defendants [15] |
| Count XVII—Tortious Interference with Contractual and Prospective Business Relations | All Government Defendants except the Town of Walkersville, and all Private Defendants |

A separate Order follows.

### *ORDER*

For the reasons stated in the foregoing Memorandum Opinion, IT IS this 6th day of March 2009, HEREBY ORDERED that:

i. The Partial Motion to Dismiss (Paper No. 14) filed by the Town of Walkersville, the Town of Walkersville Board of Appeals, Ralph Whitmore, Russell Winch, Donald W. Schildt, Chad Weddle, Roger Eyler, Dan Thomas, Vaughn Zimmerman and Harold Roderuck is GRANTED IN PART and DENIED IN PART, as follows:

---

**15.** Because Count XVI seeks judicial review of official government actions, including an annulment of Ordinance 2009–01 and preliminary and injunctive relief granting the AMC's petition for a special exception, this claim can proceed only against the Government Defendants.

i. It is GRANTED insofar as (1) the Town of Walkersville is DISMISSED as to Count XVII; (2) Plaintiffs' request for punitive damages against the Town of Walkersville and the Town of Walkersville Board of Appeals, as well as against Ralph Whitmore, Russell Winch, Donald W. Schildt, Chad Weddle, Roger Eyler, Dan Thomas, Vaughn Zimmerman and Harold Roderuck in their official capacities, is DISMISSED; and (3) Plaintiffs' claims under the Religious Land Use and Institutionalized Persons Act of 2000 in Counts IV, V, VI, VII, and VIII against Ralph Whitmore, Russell Winch, Donald W. Schildt, Chad Weddle, Roger Eyler, Dan Thomas, Vaughn Zimmerman and Harold Roderuck in their personal capacities are DISMISSED;

ii. The remainder of the Partial Motion to Dismiss is DENIED;

ii. The Motion to Dismiss (Paper No. 15) filed by Citizens for Walkersville, LLC, Ed Marino, and Steve Berryman is DENIED;

iii. Plaintiffs' Motion to Strike Amended Answer to Complaint (Paper No. 30) is MOOT;

iv. All named Defendants remain in this case and shall answer the Complaint within 20 days of the date hereof; and

v. Copies of this Order and the foregoing Memorandum Opinion shall be transmitted to counsel of record.