<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 11-1378**

———————————

ANDREW KANE, Individually and as Personal Representative of
the Estate of Andrew Dwayne Cornish,

Plaintiff - Appellant,

v.

BRIAN LEWIS; JOHN LEWIS, Officer; JENSEN SHORTER, Officer;
LEAF A. LOWE, Officer; KENNETH MALIK, Individually and in
his Official Capacity as Chief of Police for the Cambridge
Police Dept.; THE COMMISSIONERS OF CAMBRIDGE, A Body
Corporate and Politic,

Defendants - Appellees.

———————————

**No. 11-1379**

———————————

ANDREW KANE, Individually and as Personal Representative of
the Estate of Andrew Dwayne Cornish,

Plaintiff – Appellee,

v.

BRIAN LEWIS; JOHN LEWIS, Officer;  JENSEN SHORTER, Officer;
LEAF A. LOWE, Officer; THE COMMISSIONERS OF CAMBRIDGE, A
Body Corporate and Politic; KENNETH MALIK, Individually and
in his Official Capacity as Chief of Police for the
Cambridge Police Dept.,

Defendants – Appellants.

———————————

Appeals from the United States District Court for the District of Maryland, at Baltimore. Benson Everett Legg, District Judge. (1:08-cv-01157-BEL)

Argued: May 17, 2012                    Decided: June 18, 2012

Before KING, DUNCAN, and THACKER, Circuit Judges.

Dismissed by unpublished opinion. Judge Duncan wrote the opinion, in which Judge King and Judge Thacker joined.

**ARGUED:** Terrell Roberts, ROBERTS & WOOD, Riverdale, Maryland, for Appellant/Cross-Appellee. Victoria M. Shearer, KARPINSKI, COLARESI & KARP, PA, Baltimore, Maryland, for Appellees/Cross-Appellants. **ON BRIEF:** Daniel Karp, KARPINSKI, COLARESI & KARP, PA, Baltimore, Maryland, for Appellees/Cross-Appellants.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

This appeal and cross-appeal arise from the district court's partial grant of summary judgment on appellant Andrew Kane's claims under 42 U.S.C. § 1983 and the Maryland Constitution.[1]  Kane's claims are based on the 2005 fatal shooting of his son, Andrew Cornish, by police during the execution of a narcotics search warrant at Cornish's home. Because the district court has not yet entered a final judgment resolving all of Kane's claims, however, his appeal is premature under 28 U.S.C. § 1291.  Likewise, the cross-appeal brought by appellees ("appellees" or "the officers")--the four officers who participated in the search of Cornish's apartment--is not properly before us because their contention that they are entitled to qualified immunity rests on an unresolved question of fact.  As such, we dismiss both appeals for lack of jurisdiction.

---

[1] Kane's Maryland constitutional claims track his Fourth Amendment claims.  See Hines v. French, 852 A.2d 1047, 1069 (Md. Ct. Spec. App. 2004) ("The standards for analyzing claims of excessive force are the same under Articles 24 and 26 of the Maryland Constitution as that under the Fourth Amendment of the United States Constitution."); Ford v. State, 967 A.2d 210, 231 (Md. Ct. Spec. App. 2009) ("Ordinarily, Article 26 of the [Maryland] Declaration of Rights is to be read in pari materia with the Fourth Amendment.").

I.

A.

Although they offer differing versions of the story at specific points, the parties agree as to the general sequence of events that led to Cornish's fatal shooting--the event upon which Kane's claims are based. The following facts are undisputed.

The City of Cambridge Police Department began investigating Cornish based on an anonymous tip it received during the week of March 28, 2005. The tip indicated that the occupants of 408 High Street in Cambridge, Maryland, were engaging in drug activity. The residence located at 408 High Street has two stories, which are divided into a downstairs apartment and an upstairs apartment. At the time police received the anonymous tip, Nathan Latting and Karen Camper occupied the downstairs apartment ("Apartment A"), and Andrew Cornish occupied the upstairs apartment ("Apartment B").[2]

In response to the tip, Officer Leaf Lowe twice pulled and examined trash bins from the sidewalk in front of 408 High Street. On April 5, 2005, Lowe's search yielded trace amounts

---

[2] Andrew Cornish's uncle Brad Cornish resided with him in Apartment B. Brad Cornish was not a target of the 2005 narcotics search, was not present at the time of the shooting, and is not otherwise involved in this litigation.

of marijuana, as well as letters addressed to both Latting and Cornish. A subsequent search of the trash from 408 High Street, on April 19, 2005, produced similar results. Based on this information, Lowe sought warrants to search Apartments A and B for evidence of controlled substances and associated paraphernalia. The Dorchester County District Court issued search warrants for both apartments on April 25, 2005.

On May 6, 2005, Lowe and eight other members of the Cambridge Emergency Response Team and Narcotics Enforcement Team set out to execute the warrants at 408 High Street. Officers Lowe, Brian Lewis, John Lewis,[3] and Jensen Shorter planned to search Cornish's upstairs apartment--Apartment B--and the other five officers planned to search Apartment A. At approximately 4:30 a.m., the officers entered the common door that led to both apartments. The four officers assigned to search Apartment B climbed the stairs and lined up in the vestibule outside the door to that apartment. Brian Lewis used a sledgehammer to breach the door, and the officers entered.

Shorter, acting as the point man, was the first inside Cornish's apartment. The exterior door through which the

---

[3] John Lewis is Brian Lewis's uncle. Because Brian Lewis is the officer most directly involved in the shooting, references in this opinion to "Officer Lewis" or "Lewis" indicate Brian Lewis unless otherwise specified.

officers entered opened into the apartment's kitchen. A door on the left side of the kitchen led first to the living room and then to the master bedroom; a bathroom and a second bedroom were located off to the right side of the kitchen. Shorter proceeded left toward the living room and master bedroom, followed by Brian Lewis, acting as his cover man. Lowe and John Lewis covered the right side of the apartment, moving toward the second bedroom.

At some point during the officers' search of Apartment B, Cornish emerged from the master bedroom, wearing boxer shorts. All four officers who participated in the search of Cornish's apartment reported seeing Cornish advancing on Brian Lewis with some sort of weapon--what appeared to be a "machete" or a "pipe"--at the time of the shooting. See J.A. 79-85, 238-50, 343-44, 423-24.[4] It is uncontested that, after Cornish emerged from his bedroom, he encountered Brian Lewis, who fired two shots at Cornish. One shot hit Cornish in the cheek, and the other hit Cornish's forehead, fatally wounding him. Cornish's body was found halfway between the living room and the kitchen,

---

[4] Although Kane alleged in his complaint that Cornish had "grabbed a sheathed knife for his protection" when the officers entered his apartment, J.A. 18, he now posits that Cornish may not have been armed at the time of the encounter, Appellant's Br. 40. This factual dispute is not relevant to our disposition.

6

and a 15-inch knife, still in its sheath, was recovered from underneath his right leg.

B.

On May 5, 2008, Cornish's father, Andrew Kane, filed a complaint in his individual capacity and as representative of Cornish's estate in the U.S. District Court for the District of Maryland.  Kane sought relief under 42 U.S.C. § 1983, alleging that Officers Brian Lewis, John Lewis, Shorter, and Lowe had violated the Fourth Amendment through use of excessive force (namely, Brian Lewis's shooting of Cornish), by entering Cornish's apartment based on a warrant not supported by probable cause, and by improperly executing the warrant by failing to knock and announce their presence.[5]  He also claimed that the officers violated equivalent provisions of the Maryland Declaration of Rights.  Kane alleged that Cornish suffered injuries consisting of the violation of his Fourth Amendment rights, wrongful death, and physical and emotional pain and suffering.  He sought damages as compensation for these alleged injuries.

---

[5] Kane also named the Commissioners of Cambridge and Chief of Police Kenneth Malik as defendants in his complaint, asserting that they failed to properly train and supervise officers in violation of § 1983.  Kane voluntarily dismissed these claims prior to this appeal.

7

Following preliminary discovery, the officers moved for summary judgment, claiming that their actions were protected by qualified immunity. Discovery elicited the undisputed facts previously laid out; it also exposed discrepancies between the officers' version of events and other evidence offered by Kane. As relevant here, all four officers who participated in the search claim that they knocked and announced their presence prior to breaching both the common door at 408 High Street and the interior door to Cornish's apartment.[6] Kane, on the other hand, claims that the officers failed to knock and announce prior to entering either door, thus failing to alert Cornish to the fact that the intruders who entered his apartment were police officers.

After hearing evidence, the district court granted the officers' summary judgment motion in part and denied it in part. Kane v. Lewis, Civil No. L-08-1157, 2010 WL 1257884, at *6-7 (D. Md. March 26, 2010). Specifically, the district court held that the warrant authorizing entry into Cornish's apartment was supported by probable cause and that Brian Lewis was entitled to

---

[6] The parties also offer competing versions of what occurred inside Apartment B in the moments leading up to Cornish's death. The district court found that Kane had not presented sufficient evidence to create a genuine issue of fact regarding what transpired in the apartment, and because of the procedural issues explained below, we need not consider the differing accounts at this juncture.

qualified immunity on the excessive force claim because a "reasonable officer" in Lewis's situation "could have had probable cause to believe that Cornish presented a deadly threat" as he approached the officers with a knife, thus authorizing the use of deadly force. Id. at *7. The court denied summary judgment with regard to Kane's knock-and-announce claim, however, concluding that a genuine issue of material fact existed as to whether the officers actually knocked and announced their presence prior to entering Cornish's apartment.

As the case progressed toward trial for a jury resolution of this factual dispute, the officers filed a motion in limine seeking to limit the type of damages a jury could award Kane were it to find that the officers violated the knock-and-announce rule. In a July 9, 2010 order, the district court noted that Kane could potentially recover three types of damages: nominal damages for the alleged Fourth Amendment violation itself[7]; damages for the emotional distress Cornish experienced from the time the officers entered his home until he either discovered they were police officers or until his death;

---

[7] We note that, prior to making a determination regarding whether the jury would be entitled to award any actual damages, the district court stated in a June 24, 2010 letter order that "the case will go to trial, at least for nominal damages, to determine whether the officers knocked and announced their presence and purpose prior to entering Mr. Cornish's apartment." J.A. 1437.

and damages for Cornish's death itself. It then determined that Kane could recover nominal damages for the constitutional violation itself and actual damages based on Cornish's emotional distress, if a jury found such awards appropriate. It granted the officers' motion to limit damages in part, however, holding that Kane could not recover actual damages based on Cornish's death because a reasonable jury would have to find that Cornish knew he was advancing on police officers with a knife prior to the shooting, and the decision to do so constituted a superseding cause of his death.

As a result of this order, the case was set to proceed to trial for resolution of two questions. First, the jury would need to determine whether the officers knocked and announced prior to entering Cornish's apartment. If it were to determine that they did not, Kane would be entitled to nominal damages for the violation of Cornish's rights. Assuming this outcome, the jury would also have to resolve a second question: whether to award actual damages to Kane to compensate for Cornish's emotional distress.[8]

---

[8] Following the district court's ruling on the officers' motion in limine regarding damages, Kane filed a motion for reconsideration or, in the alternative, for an entry of judgment under Rule 54(b) to allow him to appeal the district court's summary judgment and damages rulings to this court immediately. The district court initially granted Kane's motion for an entry of judgment, but after further discussion with the parties, it (Continued)

10

On the morning of April 4, 2011, the date on which the trial was scheduled to begin, Kane voluntarily dismissed with prejudice what he had designated as Counts 2 and 4 of his complaint.  These counts were styled as follows:

**Count 2--42 U.S.C. § 1983--Survival Action**

Plaintiff Kane claims damages for Estate [sic] of his son based upon . . . constitutional violations.  Such damages include the decedent's pain and suffering, fright suffered before the decedent was shot, pain and suffering associated with his injuries, and the cost of funeral and burial.

. . .

**Count 4--Maryland Constitutional Claim--Survival Action**

Plaintiff Andrew Kane . . . claims damages as alleged in Count 2.

J.A. 20.  At this point, the district court appears to have halted the progression of the trial.

On April 14, 2011, Kane noted an appeal to this court, challenging the partial grant of summary judgment and the order limiting damages.  The officers filed a cross-appeal on April 18, 2011, challenging the partial denial of summary judgment based on qualified immunity, the partial denial of their motion

---

declined to certify any issue in the case for interlocutory appeal.  Instead, in an October 4, 2010 letter order, the district court set a pretrial briefing schedule and determined that trial would begin on April 4, 2011.

11

in limine regarding damages, and various other pretrial evidentiary rulings.

We requested supplemental briefing on May 1, 2012, to address the question of whether we possess jurisdiction to hear these appeals. Kane maintains that the case is properly before us. In their supplemental brief, however, the officers concede that "it does appear that jurisdiction may be lacking because a 'final judgment' under 28 U.S.C. § 1291 was never obtained." Appellees' Sup. Br. 6. Counsel for the officers confirmed at oral argument that they have come to believe that we lack jurisdiction.

II.

Although both parties initially asserted that this appeal was properly before our court, we have "an independent obligation to assess [our] subject-matter jurisdiction." Wye Oak Tech., Inc. v. Republic of Iraq, 666 F.3d 205, 218 (4th Cir. 2011). Upon review, we find jurisdiction lacking at this stage of the litigation. Specifically, we decline to consider the various issues Kane raises on appeal--as well as the majority of the issues the officers raise on cross-appeal--because the district court has not yet entered a final judgment under 28 U.S.C. § 1291. Further, although the district court's partial denial of the officers' claim to qualified immunity alone would

12

be an appealable final decision if it turned on an issue of law, we similarly lack jurisdiction over that holding because the district court's decision was based on a disputed question of fact.  As such, we dismiss both the appeal and cross-appeal.

A.

Kane seeks to challenge the district court's grant of summary judgment to Officer Brian Lewis regarding Kane's excessive force claim, based on its finding that Lewis is entitled to qualified immunity.  He also asks us to review the district court's limitation of damages regarding his knock-and-announce claim, contending that its decision not to present to the jury the option of awarding wrongful death damages was erroneous.[9]  Because it is indisputable that the threshold issue of whether the officers knocked and announced prior to executing the search warrant of Cornish's apartment has not been resolved, however, Kane's appeal is premature.

Under § 1291, "[t]he courts of appeals . . . have jurisdiction of appeals from all <u>final</u> decisions of the district courts of the United States."  28 U.S.C. § 1291 (emphasis

---

[9] Kane raises a third issue on appeal, claiming that the evidence Officer Lowe presented to establish probable cause to support the warrant authorizing the search of Cornish's apartment was stale by the time the warrant was executed.  For the reasons set forth herein, we lack jurisdiction over this claim, as well.

13

added).  A final decision "generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  Dilly v. S.S. Kresge, 606 F.2d 62, 63 (4th Cir. 1979) (quoting Catlin v. United States, 324 U.S. 229, 223 (1945)).  As such, "[t]he partial grant of summary judgment to defendants [is] not a 'final decision' for purposes of 28 U.S.C. § 1291" if "[t]here is obviously something else for the district court to do but execute the judgment."  Bellotte v. Edwards, 629 F.3d 415, 426 (4th Cir. 2011) (quoting Dilly, 606 F.2d at 63).  Further, we have previously held that "a judgment on liability that does not fix damages is not a final judgment because the assessment of damages is part of the merits of the claim that must be determined."  Carolina Power and Light Co. v. Dynegy Mktg. and Trade, 415 F.3d 354, 358 (4th Cir. 2005).  It stands to reason that the reverse must also be true: a judgment that partially determines damages but does not resolve the issue of liability leaves unresolved a portion of the merits of a claim.

Based on these principles, we find that here, "[t]here is obviously something else for the district court to do."  Bellotte, 629 F.3d at 426.  Although the district court granted summary judgment on Kane's excessive force and probable cause claims, it declined to do so with regard to his knock-and-announce claim.  It denied summary judgment because the question

14

of whether the officers knocked and announced their presence prior to entering Cornish's apartment must be determined by a trier of fact before the issue of Kane's right to any compensation can be addressed. The question of liability has thus not been resolved. The knock-and-announce claim therefore still remains in the case pending the district court's resolution of this factual dispute.

Kane contends in his supplemental brief that the district court's limitation of damages on the one issue remaining in the case--the knock-and-announce question--"was a final adjudication because it completely foreclosed Kane's wrongful death claims." Appellant's Sup. Br. 4. Kane argues that the district court's limitation of wrongful death damages and Kane's subsequent choice to voluntarily abandon his attempt to seek damages for Cornish's emotional distress left nothing further for the district court to do. We disagree. Rather, we find that Kane's voluntary abandonment of the other "claims" in his complaint merely foreclosed the possibility of his recovering a certain type of damages. The question that will determine liability-- whether the officers knocked and announced prior to entering Cornish's apartment--is still live. Further, if this question is resolved in Kane's favor, he will be able to recover nominal damages under § 1983 for the violation of Cornish's constitutional rights. See Carey v. Piphus, 435 U.S. 247, 266

15

(1978) (holding that under § 1983, violations of constitutional rights are "actionable for nominal damages without proof of actual injury"). As such, a jury must resolve this factual dispute before the district court may enter a final judgment under § 1291. Absent a final decision or another valid means of establishing Kane's right to appear before this court--which he has not presented--we lack jurisdiction over his appeal.

B.

Although the officers have conceded that we lack jurisdiction over their cross-appeal, for thoroughness, we briefly explain why we agree. The officers assert on cross-appeal that the district court erred by denying their motion for summary judgment based on qualified immunity with respect to the knock-and-announce claim.[10] We lack jurisdiction over this claim as well.

"Notwithstanding the absence of a final judgment, we have jurisdiction to review a district court's denial of a claim of qualified immunity . . . to the extent that it turns on an issue of law. . . ." Orem v. Rephann, 523 F.3d 442, 445 (4th Cir.

---

[10] The officers also contend on cross-appeal that the district court erred by denying their motion for a protective order and by denying their motion to exclude evidence of Cornish's shooting at trial. We lack jurisdiction over these claims for the reason detailed above: the district court has not issued a final judgment under § 1291.

2008) (quotations omitted) (emphasis added). "However, we lack jurisdiction to review the district court's order 'insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial.'" Gould v. Davis, 165 F.3d 265, 268 (4th Cir. 1998) (quoting Johnson v. Jones, 515 U.S. 304, 320 (1995)). In other words, "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order" if the district court "acted on the basis that there existed in the case genuine disputes of material fact and that the resolution of such disputes at trial was necessary before the legal issue of . . . qualified immunity could be determined." Culosi v. Bullock, 596 F.3d 195, 201-02 (4th Cir. 2010) (quoting Johnson, 515 U.S. at 319-20).

Here, the district court denied the officers' motion for summary judgment based on qualified immunity with regard to Kane's knock-and-announce claim "because a dispute of material fact exists as to whether the officers knocked and announced."[11] J.A. 1348. "Whether we agree or disagree with the district court's assessment of the record evidence on that issue . . . is

---

[11] As discussed above, the district court found that conflicting testimony elicited during the discovery process created a genuine issue of material fact as to whether the officers knocked and announced their presence before entering Cornish's apartment, as required under the Fourth Amendment. See Bellotte, 629 F.3d at 419.

of no moment in the context of this interlocutory appeal."

Culosi, 596 F.3d at 201. This is because "there is no legal issue on appeal on which we could base jurisdiction." Iko v. Shreve, 535 F.3d 225, 237 (4th Cir. 2008). Illustrative of this point is the fact that the officers present no legal questions in their opening brief, only arguments about the disputed factual questions regarding the knock-and-announce claim. As such, we must also dismiss the cross-appeal for lack of jurisdiction.


                              III.

    For the foregoing reasons, this appeal and cross-appeal are dismissed for lack of jurisdiction and remanded to the district court for further proceedings in line with this opinion.

                                              DISMISSED