Affirmed in part, vacated in part, and remanded with instructions by unpublished opinion. Judge DUNCAN wrote the opinion, in which Judge AGEE joined. Judge HARRIS wrote a separate opinion concurring in part and dissenting in part.
Unpublished opinions are not binding precedent in this circuit.
DUNCAN, Circuit Judge:
This appeal is the second to come before us in a 42 U.S.C. § 1983 challenge to Maryland police officers’ alleged use of excessive force and failure to properly knock and announce at the residence of Andrew Cornish on May 6, 2005. The jury found in favor of the police (the “Officers”) on the excessive force claim, and in favor of Plaintiff-Appellee Andrew Kane, on behalf of his deceased son, Cornish, on the knock- and-announce claim. For the reasons that follow, we vacate the portion of the district court’s judgment awarding Kane monetary relief in the amount of $250,000 and remand for an entry of an award of nominal damages only. We affirm the judgment of the district court on all other grounds.
I.
We take many of the facts and much of the procedural history from our prior opinion, adding to them as necessary. See Kane v. Lewis, 483 Fed.Appx. 816 (4th Cir.2012) (unpublished). In this exposition, we indicate where. the facts are in dispute.
A.
On May 6, 2005, the Officers set out to execute warrants at 408 High Street in Cambridge, Maryland, a residence consisting of an upstairs apartment and a downstairs apartment. Andrew Cornish and Bradrick Cornish (“Brad”) occupied the upstairs apartment, Apartment B. The Officers wore clothing “displaying] the word ‘police,’ and had their badges clipped to or screen printed on their shirts.” J.A. 36; see also J.A. 554.
The Officers testified that they breached the exterior door of the building at approximately 4:30 a.m. J.A. 534. The four officers assigned to search -Apartment B— Officer Jensen Shorter, Detective Brian Lewis, Detective Leaf Lowe, and Sergeant John Lewis — climbed the stairs and lined up outside of the apartment. They allege that they pounded on the door two separate times, yelling “Cambridge Police, search warrant” and pausing one to two seconds after each set of knocks, and that they used a sledge hammer to knock down the apartment door when there was no response. J.A. 828-29; see also J.A. 553. The downstairs residents testified that they did not hear the police announce themselves at Cornish’s door. See J.A. 457-59, 288.
*231 Officer Shorter was the first inside Cornish’s apartment. The exterior apartment door opened into the kitchen. A door on the left side of the kitchen led to the living room and master bedroom. The door between the kitchen and living room was 16.5 feet away from the master bedroom door. J.A. 243. A second bedroom and a bathroom were located to the right of the kitchen. The apartment was illuminated by a light in the kitchen and a television set in the living room, both of which were turned on at the time of the search. See J.A. 38, 570, 602, 639-40.
The following facts are drawn from the Officers’ testimony. Upon entry into the apartment, Officer Shorter headed left toward the living room and master bedroom, followed by Detective Lewis. Detective Lowe and Sergeant Lewis moved to the right side of the apartment towards the second bedroom. Officer Shorter and Detective Lewis testified that they shouted “Cambridge Police, search warrant” as they entered the apartment and headed towards Cornish’s master bedroom door. See J.A. 853-54. The master bedroom door was closed, and Officer Shorter unsuccessfully attempted to kick it down. After the Officers had been in Cornish’s apartment for about “30 seconds,” the master bedroom “door fl[ew] open” and knocked Officer Shorter off balance to the right side of the doorway. J.A. 856-57. Officer Shorter lost sight of Detective Lewis at that point, but testified that he saw Cornish charging across the living room with a knife. Detective Lewis testified that Cornish emerged from the master bedroom with a knife, swinging it in a “back and forth” motion, and crossed the living room towards him at a “steady pace.” J.A. 859. Detective Lewis baekpe-daled “15 feet or more” to the kitchen while yelling at Cornish repeatedly to “drop the knife.” J.A. 858-59. Cornish was approximately three feet away when Detective Lewis backed into an object in the kitchen and was unable to retreat further. At this point, Detective Lewis fired two shots at Cornish.
The first shot hit Cornish in the cheek, and the second hit Cornish’s forehead, fatally wounding him. Cornish’s body landed halfway through the doorway between the kitchen and the living room — in other words, a distance from his master bedroom amounting to the length of the living room. See J.A. 243. A 15-inch knife, still in its sheath, was recovered from underneath his right leg.
On May 5, 2008, Kane filed a complaint in his individual capacity and as representative of Cornish’s estate in the U.S. District Court for the District of Maryland. As relevant here, Kane • sued under 42 U.S.C. § 1983, alleging that the Officers violated the Fourth Amendment by using excessive force and failing to knock and announce their presence. Kane sought damages for wrongful death and physical and emotional pain and suffering.
The Officers moved for summary judgment, arguing that their actions were protected by qualified immunity. The Officers claimed that they knocked and announced their presence prior to breaching both the exterior door at 408 High Street and the interior door to Cornish’s apartment. Kane, on the other hand, claimed that the officers failed to knock and announce at either door,' thus failing to alert Cornish to the fact that the men forcefully entering his apartment were police officers.
The district court granted the Officers’ summary judgment motion in part and denied it in part. Kane v. Lewis, No. 08-cv-1157, 2010 WL 1257884, at *6-7 (D.Md. Mar. 26, 2010). With respect to the issues before us, the district court held that Detective Lewis was entitled to *232 qualified immunity on the excessive force claim because a reasonable officer under the circumstances could have believed Cornish presented a deadly threat as he approached the Officers with a knife. The court, however, denied summary judgment on Kane’s knock-and-announce claim, finding it based on a genuine issue of material fact.
As the case progressed toward trial, the Officers filed a motion in limine seeking to limit the type of' damages a jury could award Kane were it to find that the Officers violated the knock-and-announce rule. By order dated July 9, 2010, the district court concluded that Kane could recover nominal damages for such a violation and, separately, damages for the emotional distress Cornish experienced from the time the Officers entered his home until his death. The court held that Kane could not recover wrongful death damages for Cornish’s death itself because the evidence suggested that Cornish “must have known that the men in his apartment were police officers but advanced on them nonetheless, and that no reasonable jury could conclude otherwise.” J.A. 79. The court determined that Cornish’s conduct constituted a superseding cause of his death that extinguished monetary liability for these damages.
As a result of this order, the case was set to proceed to trial to resolve two questions: First, whether the Officers knocked and announced prior to entering Cornish’s apartment. If the jury determined that they did not, Kane would be entitled to nominal damages for the violation of Cornish’s rights. Then, the jury would have to resolve a second question: whether to award actual damages to Kane to compensate for Cornish’s emotional distress prior to his death.
On April 4, 2011, the day of trial, Kane voluntarily dismissed with prejudice his § 1988 claims for damages for pain, suffering, and emotional distress. Kane then sought to appeal the partial grant of summary judgment and the order limiting damages. The Officers cross-appealed.
We dismissed both appeals for lack of jurisdiction. See Kane v. Lewis, 483 Fed.Appx. 816 (4th Cir.2012). We held that Kane’s appeal was premature because there remained a genuine factual dispute over “whether the officers knocked and announced prior to entering Cornish’s apartment.” Id. at 822. Indeed, we noted that Kane might still “be able to recover nominal damages under § 1983 for the violation of Cornish’s constitutional rights” if the jury determined that the Officers failed to knock and announce. Id. We also held that this factual dispute precluded review of the Officers’ cross-appeal because Defendants’ qualified immunity defense would require the resolution of disputed facts. See id. at 822-23.
B.
On remand, Kane asked the court either to reconsider its ruling denying wrongful death damages or to enter summary judgment in favor of Kane on his knock-and-announce claim. The court denied the request and set the case for trial to “determine whether a knock-and-announce violation occurred.” J.A. 83.
On December 7, 2012, the case was reassigned to a different district court judge[1] and Kane made the same request that the previous court had denied. The second district court reversed several of the prior rulings. Significantly for our purposes, instead of allowing trial to proceed solely on the knock-and-announce issue, the second district court also permitted the jury *233 to “consider the excessive force claim and the claim for wrongful damages arising from the alleged unlawful entry.”[2] J.A. 84.
At the close of trial, the jury returned a verdict in favor of Kane on the knock-and-announce claim, but found in favor of Detective Lewis, the officer who fired the fatal shot, on the excessive force claim.. The jury awarded non-economic damages in the amount of $250,000 for wrongful death associated with the knock-and-announce violation and the district court entered judgment pursuant to this verdict.
The district court denied in part and granted in part the Officers’ subsequent motion to alter or amend the judgment. It held that the excessive force verdict did not conflict with the knock-and-announce verdict because the Officers “created an unnecessary risk of harm to Cornish by their violation of the knock and announce rule.” J.A. 1110.
The district court also denied the Officers qualified immunity, holding that the law with respect to the Officers’ duty to knock and announce in' these circumstances was clearly established. This appeal followed.
II.
On appeal, the Officers claim that they are hable only for nominal damages arising out of their failure to properly knock and announce and that they are entitled to qualified immunity on the knock-and-announce claim. We devote our attention to the knock-and-announce and qualified immunity issues because they were the primary focus of this, appeal, and consider each argument in turn.[3]
As a threshold issue, however, we must first determine the governing standard of review. The Officers’ motion to alter or amend the judgment, the denial of which they appeal here, cites both Rule 50 and Rule 59 of Federal Rules of Civil Procedure, and the district court did not identify either authority in its ruling. See J.A. 1108-10.
Although the Officers styled their motion as one to alter or amend the judgment, it is more appropriately viewed as one under Rule 50(b). The Officers moved for judgment as a matter of law under Rule 50(a) before the jury retired to deliberate, arguing that Detective Lewis’s use of force was justified as a matter of law and, as a consequence, that Kane could recover only nominal damages on the knock-and-announce claim. See J.A. 734 (moving for judgment as a matter of law at close of Kane’s evidence), J.A. 907-08 (renewing the motion at the close of the Officers’ evidence). The district court denied the motions. See J.A. 763, 908. Following the jury’s verdict — and as contemplated by Rule 50(b) — the Officers filed this post-judgment' motion raising the same arguments. See Mem. Supp. Defs.’ Mot. Alter Am. J., Kane, No. 08-cv-01157 (D.Md. Nov. 7, 2013), ECF No. 199-1. Accordingly, we consider the Officers’ motion to alter or amend the judgment under Rule 50(b). See Cosgrove v. Bartolotta, 150 F.3d 729, 732 (7th Cir.1998) (holding under similar circumstances that a motion styled as a Rule 59(e) motion was properly treated as a Rule 50(b) motion).
We review a district court’s denial of a Rule 50(b) motion de novo. See White v. *234 Cnty. of Newberry, S.C., 985 F.2d 168, 172-73 (4th Cir.1993). A Rule 50(b) motion should be granted if a district court determines, without considering the credibility of the witnesses or weighing the evidence, that substantial evidence does not support the jury’s findings. See id. at 173. In reviewing a district court’s decision on a Rule 50(b) motion, “we view the evidence adduced at trial ‘in the light most favorable to the prevailing party,’ ” Durham v. Jones, 737 F.3d 291, 298 (4th Cir.2013) (quoting Sloas v. CSX Transp., Inc., 616 F.3d 380, 392 (4th Cir.2010)), and “reverse only if ‘the evidence favoring the [plaintiff] is [not] legally sufficient to overcome the defense,’ ” id. (alterations in original) (quoting Ortiz v. Jordan, 562 U.S. 180, 131 S.Ct. 884, 889, 178 L.Ed.2d 703 (2011)).
A.
We turn now to the Officers’ primary argument on appeal — that the district court erred by failing to remit the jury’s damages award in favor of Kane on the knock-and-announce claim to nominal damages. For the reasons that follow, we agree.
The Officers argue that, in finding in the Officers’ favor on the excessive force claim, the jury determined that Detective Lewis shot Cornish in self-defense, and therefore “necessarily concluded that Cornish realized and appreciated that the Officers were police officers prior to advancing upon [Detective] Lewis with a knife.” Appellants’ Br. at 33-34. They therefore contend that “Cornish’s undisputed [conduct] in attacking [Detective] Lewis” was the “superseding cause of his death,” id. at 39 — and that there was no evidence that would have allowed the jury reasonably to conclude otherwise.
Kane responds, and the second district court agreed, that “[t]he jury had sufficient evidence to conclude that in the absence of a knock and announcement ... it was reasonably foreseeable that a surprised Cornish may rush to the front door and take action in supposed self-defense and that a police officer may view that action as threatening and shoot and kill him.” Appellee’s Br. at 33. This view, however, does not accurately reflect either the applicable law or the facts of record.
Damages awarded under § 1983 for violations of constitutional rights are ordinarily governed by common law tort principles. See Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 305-06, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). “[T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights.... ” Carey v. Piphus, 435 U.S. 247, 254, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (emphasis added). A plaintiff asserting a constitutional tort under § 1983 must therefore satisfy the familiar element of proximate causation. See Murray v. Earle, 405 F.3d 278, 290 (5th Cir.2005) (“Section 1983 ... requirefs] a showing of proximate causation, which is evaluated under the common law standard.”); see also Shaw v. Stroud, 13 F.3d 791, 800 (4th Cir.1994) (“[T]he causal link in § 1983 cases is analogous to proximate cause.”). Section 1983 tort defendants are certainly “responsible for the natural consequences of [their] actions.” Malley v. Briggs, 475 U.S. 335, 344 n. 7, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (quoting Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)) (internal quotation mark omitted). However, “[a] superseding cause [will] break[ ] the chain of proximate causation.” Lamont v. New Jersey, 637 F.3d 177, 185 (3d Cir.2011); see also Warner v. Orange Cnty. Dep’t of Prob., 115 F.3d 1068, 1071 (2d Cir.1996) (noting that “in cases brought under § 1983 a su *235 perseding cause, as traditionally understood in common law tort doctrine, will relieve a defendant of liability”). Specifically, the “subsequent acts of independent decision-makers ... may constitute intervening superseding causes that break the causal chain” and insulate police officers from § 1988 liability. Evans v. Chalmers, 708 F.3d 636, 647 (4th Cir.2012).
In similar circumstances, the Third Circuit has held that officers are liable only for “the harm ‘proximately’ or ‘legally’ caused by [their illegal entry]” and not “for all of the harm caused in the ‘philosophic’ or but-for sense by the illegal entry.” Bodine v. Warwick, 72 F.3d 393, 400 (3d Cir.1995) (Alito, J.).[4] As such, officers who have unlawfully entered a home are not liable for “harm produced by a ‘superseding cause’” or the harm caused by the officers’ “non-tortious, as opposed to ... tortious, ‘conduct,’ such as the use of reasonable force.” Id. The Bodine court illustrated its view with a hypothetical similar to the facts before us:[5] if officers improperly entered a suspect’s house without knocking and announcing their presence but — once the officers were inside and had identified themselves — the suspect broke away and killed two of the officers, a third officer would not “necessarily [be] liable for the harm caused to the suspect [in attempting to disarm him] on the theory that the illegal entry without knocking and announcing rendered any subsequent use of force unlawful.” Id.
Other courts have also addressed § 1983 causation in similar circumstances and determined that a plaintiffs conduct was the superseding cause of harm when it precipitated subsequent harm caused by an officer’s use of force. See James v. Chavez, 511 Fed.Appx. 742, 750 (10th Cir.2013) (unpublished) (concluding that, when a suspect was killed while attempting to stab a police officer, it was the suspect’s “unlawful and deliberate attack on the SWAT team [that] constitute^] a superseding cause of his death”); Estate of Sowards v. City of Trenton, 125 Fed.Appx. 31, 41 (6th Cir.2005) (unpublished) (holding that the suspect’s “actions in threatening ... officers with [a] handgun are what led to his injuries and death”).
Turning to the record, we conclude that no reasonable jury could have found that the Officers’ knock-and-announce violation proximately caused Cornish’s death.[6] See Bodine, 72 F.3d at 400. The evidence Kane presented at trial was insufficient to establish that Cornish did not recognize that the men in his apartment were police officers,' and therefore that the Officers’ illegal entry was the legal cause of Cornish’s death. Kane presented the testimony of Cornish’s roommate, Brad, who was not at home at the time of the search, and the expert testimony of Dr. John Adams, a *236 physician and board certified pathologist.[7] Brad testified that the door to the master bedroom, which was old and had to be lifted before it could be opened, was open when he left the apartment approximately two hours before the search. See J.A. 481-88. He also testified that a bicycle and a stereo were located in the area where Officer Shorter stumbled to the right of Cornish’s master bedroom door, J.A. 488; a crime scene photo indicated that neither item toppled during the confrontation. J.A. 205-06. Dr. Adams testified that he believed that Cornish moved “a foot or two ... forward” in between the first and second shots before landing in the doorway between the living room and kitchen, and that he was. unable to determine how fast Cornish was moving when he was shot. J.A. 688. Dr. Adams also testified that he could form only a “very incomplete” opinion as to Cornish’s position at the time of each shot, J.A. 684, and that he could not definitely conclude whether Cornish was holding a sheathed knife in his hand at the time, of the first shot, although the knife was found under his body. J.A. 697. Drawing all reasonable inferences in Kane’s favor, this evidence reveals nothing about Cornish’s state of mind as he advanced on the Officers or his opportunity to recognize them as police.[8] Accordingly, Kane’s evidence is insufficient to establish ' that Cornish’s death was “the natural consequence[ ] of [the Officers’] actions.’.’ Malley, 475 U.S. at 344 n. 7, 106 S.Ct. 1092.
Moreover, the undisputed evidence establishes that Cornish must have recognized that the men in his apartment were police officers. It is undisputed that Cornish was found in the doorway between the living room and the kitchen. To reach that point, he had to travel more than 16 feet across an illuminated living room toward an illuminated kitchen in the direction of two police officers in SWAT gear who were shouting théir identity.[9] On *237 these facts, as the first district court aptly recognized, Cornish “must have known that the men in his apartment were police officers but advanced on them nonetheless, and ... no reasonable jury could conclude otherwise.” J.A. 79.
Unfortunately for Kane, the strategic decision to abandon his claim for damages for emotional distress Cornish suffered during the period of time between the Officers’ entry and Cornish’s death constrains him here. Kane is no longer able to pursue recovery for that critical interval, which the claim itself recognizes existed.[10] Had those claims been presented to the jury, it would have been easier for us to find an evidentiary basis for a monetary award other than nominal damages.
Because Cornish must have known that the men were police officers, yet advanced toward them with a knife, his “unlawful and deliberate attack on the [police] constitute[d] a superseding cause of his death.”' James, 511 Fed.Appx. at 750. In other words, the Officers’ illegal entry was not the legal cause of Cornish’s death; rather, he was “killed as a direct result of trying te stab a police officer.” Id. Accordingly, Kane is entitled only to nominal damages to vindicate the deprivation of Cornish’s constitutional rights on the knoek-and-an-nounce claim.
B.
The Officers next contend that they are entitled to qualified immunity on Kane’s knock-and-announce claim. We disagree.[11]
The Officers argue that “the jury found that the Officers knocked and announced their presence at Andrew Cornish’s door, but ... also determined that the Officers did not ‘properly[5] wait long enough before entering.”[12] Appellants’ Br. at 44. They further contend that, at the time of this search, it was not clearly established how long “police officers must wait after knocking and announcing their presence before forcibly entering a dwelling to execute a narcotics search warrant, particularly where, as here, both an outer and inner door are involved.” Appellants’ Br. at 51.
Qualified immunity shields government officials from civil liability for § 1983 *238 claims unless “(1) the allegations, if true, substantiate a violation of a federal statutory or constitutional right and (2) the right was ‘clearly established’ such that a reasonable person would have known his acts or omissions violated that right.” Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir.2011) (quoting Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir.2006)). The knock-and-announce rule, in the absence of unusual circumstances not present here, is a clearly established right. See Wilson v. Arkansas, 514 U.S. 927, 931-36, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). Therefore, if the Officers violated the knock-and-announce rule here, they would not be entitled to qualified immunity.
The evidence substantiates the jury’s verdict finding that the Officers “fail[ed] properly to knock and announce before entering [Cornish’s] apartment.” J.A. 1091. For example, the downstairs residents testified that they did not hear the Officers knock at the exterior door to the house, J.A. 285-88, 451-59, nor did they hear, though the walls in the High Street residence were thin, the police announce themselves at Cornish’s door, J.A. 288, 457. And despite the Officers’ testimony that they used a battering ram to breach the outside door, Kane presented evidence that the glass portion of the door was unbroken. J.A. 547. As the first district court noted below, “[b]ecause the officers synchronized their entry into both [apartments], and because the walls were thin, the silence supports the proposition that. the police failed to knock and announce before entering either apartment.” J.A. 53.
Because there was sufficient evidence that the Officers failed to properly knock and announce their presence and the requirement is clearly established, we reject the Officers’ argument that they are entitled to qualified immunity.
III.
For the foregoing reasons, the judgment of the district court is

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.

. .For ease of reference, we shall refer to this as the second district court.

. The claim for emotional distress, having previously been dismissed with prejudice at Kane’s request, was not reinstated by the second district court, nor could it have been at that point in the case.

. We have considered the Officers’ challenges to the district court’s jury instructions and find them without merit,

. The Fifth and Tenth Circuits have cited Bodine favorably. See Freeman v. Gore, 483 F.3d 404, 417 (5th Cir.2007); Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir.2006).

. Bodine involved police officers carrying out a custody order, rather than a search warrant. However, the court in Bodine noted that the "troopers' authority to enter the Bo-dine residence in carrying out the mandate of that [custody] order was similar to that of an officer executing an ordinary [search or arrest] warrant.” 72 F.3d at 397.

.The dissent states that "[i]t was up to the Officers ... to prove that Cornish’s advance on them was knowing and intentional, thus qualifying it as a superseding cause.” Diss. Op. at 240. However, because "a superseding cause acts as an affirmative defense,” id. (emphasis added), a defendant bears the burden of establishing this defense only after a plaintiff proves the proximate cause element of a § 1983 claim. Here, for the reasons we explain below, Kane failed to show proximate causation, which ends our analysis.

. Dr. Adams was deceased at the time of trial. His deposition testimony was read into the record. See J.A. 680.

. The dissent points out that, "at the moment [Cornish] heard the commotion at his front door, Cornish simply had no reason to expect ... the police.” Diss. Op. at 240. We agree, but that Cornish may have initially thought the intruders in his home were not the police has no bearing on the issue of whether, after then traveling more than 16 feet across the apartment, Cornish knew that he was advancing on police officers.

. In concluding "that Cornish never had a chance to ... properly identify the Officers," Diss. Op. at 241, the dissent does not account for critical facts. The dissent states that an illuminated television set was the only source of light in the apartment. But, as we mention above, the apartment’s kitchen light was also on, providing an additional source of brighter light. Given the layout of the apartment and the fact that the fatal shooting occurred when the Officers were in the kitchen and Cornish was in the kitchen doorway, this fact is critical. The dissent also relies on the fact that the Officers “were not wearing the traditional and easily recognizable blue police uniform.” Id. at 233. All of the Officers, including Detective Lewis, were wearing clothing "marked 'police,' ” J.A. 894, and some wore SWAT gear that included "military-style helmet[s] with goggles,”' J.A. 893, and "bulletproof vest[s]” displaying the word police “in bright white letters,” J.A. 593, 638. And aside from this distinctive clothing, the Officers were also shouting their identity as police throughout the encounter. Finally, the dissent does not meaningfully account for how, in the time it took to cross 16 feet, Cornish could have failed to perceive the Officers’ identity. Although it may be the case in some circumstances that "[o]nce officers breach the door unannounced ... it is too late to count on badges or other forms of notice to prevent the surprised and violent conflict with which the [knock-and-announce] rule is concerned,” id. at 233, this is not true here. The uncontro-verted evidence shows that Cornish chose, for reasons unknown, to advance with a knife on people he knew to be police officers.

. Kane's own recognition of the time lapse between the Officers’ unannounced entry and Cornish's death refutes the dissent’s contention "that Cornish never had a chance to reassess the situation and properly identify the Officers.” Diss. Op. at 241.

. The Officers also argue that they are entitled to statutory public-official immunity under Maryland law. Unlike the objective analysis of federal qualified immunity, Maryland public-official immunity turns on a subjective inquiry into "malice”; an official may not be held liable even for objectively unreasonable conduct' if it is undertaken without an improper motive. See, e.g., Shoemaker v. Smith, 353 Md. 143, 725 A.2d 549, 557-59 (1999); Moxley v. Town of Walkersville, 601 F.Supp.2d 648, 665-66 (D.Md.2009). However, we need not separately address the state-law immunity question here. The parties agree that there is only one jury verdict, for $250,000, covering both the federal and state constitutional violations. See ECF No. 37-2 (letter memorializing agreement between the parties); J.A. 1112 (amended judgment). And because state-law immunity cannot inoculate the Officers from liability for a federal constitutional violation, our holding that the Officers are not entitled to qualified immunity on the federal knock- and-announce claim is sufficient to impart liability for the entire verdict, without respect to the state constitutional claim. Moreover, under Maryland law the municipality — here the City of Cambridge — is responsible for the first $200,000 of damages on the state constitutional claim. See J.A. 1110. Therefore, given our holding limiting Kane's recovery to nominal damages, there will be no personal liability on the state-law claim in any event.

.We note that the jury verdict found that the Officers failed to "properly” knock and announce. It did not include a temporal reference.

. The majority also points out that the first district court to consider this case on the pleadings concluded that Cornish "must have known that the men in his apartment were police officers.” But surely it is at least as significant that the second district court — the one that presided over the four-day trial in this case and heard all of the evidence and testimony — came to the opposite conclusion. See Kane v. Lewis, 989 F.Supp.2d 468, 469-70 (D.Md.2013).