**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1140**

ANDREW KANE, Individually and as Personal Representative of the Estate of Andrew Dwayne Cornish,

Plaintiff – Appellee,

v.

BRIAN LEWIS; OFFICER JOHN LEWIS; OFFICER JENSEN SHORTER; OFFICER LEAF A. LOWE; KENNETH MALIK, Individually and in his Official Capacity as Chief of Police for the Cambridge Police Dept.; THE COMMISSIONERS OF CAMBRIDGE, A Body Corporate and Politic,

Defendants – Appellants.

**No. 16-1239**

ANDREW KANE, Individually and as Personal Representative of the Estate of Andrew Dwayne Cornish,

Plaintiff – Appellant,

v.

BRIAN LEWIS; OFFICER JOHN LEWIS; OFFICER JENSEN SHORTER; OFFICER LEAF A. LOWE; KENNETH MALIK, Individually and in his Official Capacity as Chief of Police for the Cambridge Police Dept.; THE COMMISSIONERS OF CAMBRIDGE, A Body Corporate and Politic,

Defendants – Appellees.

Appeals from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Senior District Judge. (1:08-cv-01157-JFM)

Argued: December 9, 2016                    Decided: January 13, 2017

Before DUNCAN, AGEE, and HARRIS, Circuit Judges.

Vacated and remanded with instructions by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Agee and Judge Harris joined.

**ARGUED:** Victoria M. Shearer, KARPINSKI, COLARESI & KARP, P.A., Baltimore, Maryland, for Appellants/Cross-Appellees. Terrell Roberts, ROBERTS & WOODS, Riverdale, Maryland, for Appellee/Cross-Appellant. **ON BRIEF**: Daniel Karp, KARPINSKI, COLARESI & KARP, P.A., Baltimore, Maryland, for Appellants/Cross-Appellees.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

This appeal and cross-appeal concern the propriety of the district court's order awarding Plaintiff-Appellee Andrew Kane $25,000 in attorney's fees under 42 U.S.C. § 1988(b) after Kane obtained a judgment for nominal damages. The underlying action pursuant to 42 U.S.C. § 1983--now before us for the third time--arises from the fatal shooting of Kane's son, Andrew Cornish, during the execution of a search warrant. Defendants-Appellants, police officers with the City of Cambridge, Maryland and the City's Commissioners, argue that no fees are warranted. In his cross-appeal, Kane argues the fee award should be higher. We conclude that the district court failed to adequately explain the basis for the fees, and after thoroughly searching the record, we can find none. Accordingly, we vacate the award of attorney's fees and remand with instructions that the district court enter an order denying Kane attorney's fees.

I.

The facts and procedural history of this case are discussed at length in our prior decisions. *See Kane v. Lewis*, 483 F. App'x 816 (4th Cir. 2012) (unpublished) ("*Kane I*"); *Kane v. Lewis*, 604 F. App'x 229 (4th Cir.), *cert. denied,* 136 S. Ct. 358 (2015) (unpublished) ("*Kane II*"). Below we discuss only that background necessary to frame our analysis of the fee award.

A.

Kane filed this lawsuit in 2008, alleging that the police officers violated the Fourth Amendment by using excessive force in shooting Cornish, and failing to knock

3

and announce their presence before entering Cornish's apartment. At the close of trial after *Kane I*, the jury found that the officers did not use excessive force, but found that the officers failed to "properly" knock and announce. *Kane II*, 604 F. App'x at 233, 238. The jury awarded Kane $250,000 in noneconomic damages associated with the unlawful entry.

On appeal in *Kane II*, we vacated the compensatory damages award because Kane failed to show proximate cause--an essential element of his wrongful death claim for the knock-and-announce violation. Moreover, on the eve of trial, Kane voluntarily dismissed with prejudice his emotional distress claim. Without the emotional distress claim to support a compensatory damages award, we directed the entry of nominal damages for Kane's victory on the knock-and-announce violation.

### B.

On May 8, 2015, the district court entered judgment awarding Kane $1.00 in nominal damages against all defendants. J.A. 137. Kane then filed the motion for attorney's fees that forms the basis of this appeal. On October 23, 2015, the district court summarily denied the motion on the grounds that Kane "claimed only money damages and recovered no money damages." J.A. 148. Kane moved for reconsideration, pointing out that he had in fact recovered nominal damages of $1.00.

At the November 30, 2015, motion hearing, the district court concluded that fees were warranted, stating that there was a Fourth Amendment violation about which the officers lied. J.A. 170–71. The court's justification, however, was cursory at best. As to the appropriate amount, the court discussed the fees sought ($277,363) and the time Kane

4

spent on the claim he lost, and then concluded that an award of $25,000 was the proper amount "to preserve the rule of law." J.A. 181.

Kane filed a motion to alter or amend the judgment, which the court denied. Recognizing that it had not performed the calculations normally used to determine an appropriate fee amount, the court stated that its $25,000 award was intended to serve as a deterrent to future misconduct. J.A. 192. Both parties timely appealed.

## II.

### A.

We review the district court's decision to grant or deny attorney's fees under § 1988 for abuse of discretion. *Mercer v. Duke Univ.*, 401 F.3d 199, 203 (4th Cir. 2005). A district court abuses its discretion if it fails "adequately to consider 'judicially recognized factors constraining its exercise' of discretion." *Mid Atl. Med. Servs., LLC v. Sereboff*, 407 F.3d 212, 221 (4th Cir. 2005) (quoting *James v. Jacobson,* 6 F.3d 233, 239 (4th Cir. 1993)).

### B.

In a civil rights suit, the court may award attorney's fees to the prevailing party. 42 U.S.C. § 1988(b). Although a party who obtains nominal damages is a prevailing party, it is often the case that such a prevailing party merits no fee at all. *See Farrar v. Hobby*, 506 U.S. 103, 113, 115 (1992).

To determine when fees are warranted, courts must separate "the usual nominal-damage case, which warrants no fee award, from the unusual case that does warrant an

5

award of attorney's fees." *Mercer*, 401 F.3d at 204. Justice O'Connor's concurrence in Farrar laid out three factors to consider, which this court adopted in *Mercer*: (1) the extent of relief obtained in comparison to the relief sought, (2) the significance of the legal issue on which the plaintiff prevailed, and (3) the public purpose served by the litigation. Id. (citing *Farrar*, 506 U.S. at 122 (O'Connor, J., concurring)).

1.

The first and most important factor "is the degree of success obtained." *Farrar*, 506 U.S. at 114 (citation omitted). We measure the degree of success by comparing the damages sought to the damages awarded. *Mercer*, 401 F.3d at 204.

*Farrar* illustrates the type of ordinary nominal-damages case in which the plaintiff's limited success justifies no fee award. In *Farrar*, the plaintiffs sued six state officials, alleging due process violations. 506 U.S. at 106. The plaintiffs sought $17 million in damages, but no declaratory or injunctive relief. *Id.* At trial, the jury found that one official violated plaintiff Joseph Farrar's civil rights, but that the official's conduct did not proximately cause any injury. *Id.* For this technical victory, the plaintiffs received only nominal damages. *See id.* at 107.

After the district court subsequently awarded the plaintiffs attorney's fees, the Fifth Circuit reversed, holding that the plaintiffs were not "prevailing parties" under § 1988. *Id.* at 107. Although the Supreme Court concluded that a party who obtains nominal damages is a "prevailing party," the Court nonetheless affirmed the Fifth Circuit's denial of fees, stating that "[w]hen a plaintiff recovers only nominal damages

6

because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.* at 115 (citation omitted).

Here, Kane admits that his recovery was limited. *See* Appellee's Br. at 17–18. Kane sought only compensatory damages, not injunctive or declaratory relief. And, like the *Farrar* plaintiffs, Kane did not receive any compensatory damages because he failed to prove an essential element of his claim at trial. Moreover, Kane's strategic decision, for whatever reason, to dismiss the emotional distress claim before trial--the only claim that could have sustained the jury's compensatory damages award--further highlights his limited success.[1]

Kane attempts to distinguish *Farrar* because the jury awarded him damages against all defendants on the knock-and-announce claim, whereas the *Farrar* plaintiffs prevailed against only one defendant, and he did not overreach by asking for more than was warranted because the complaint sought no specific amount in damages. Neither of these grounds materially distinguishes Kane from the *Farrar* plaintiffs. Kane lost on the only claim that distinguished among defendants--the excessive force claim against the officer who shot Cornish--and thus his victory against all the defendants on the knock-and-announce claim cannot bear the weight he places on it. Second, even though he did not seek a specific dollar amount in his complaint, that fact cuts as much against him as

---

[1] *See Kane II*, 604 F. App'x at 237 ("Unfortunately for Kane, the strategic decision to abandon his claim for damages for emotional distress Cornish suffered during the period of time between the Officers' entry and Cornish's death constrains him here. . . . Had those claims been presented to the jury, it would have been easier for us to find an evidentiary basis for a monetary award other than nominal damages.").

7

for him: by seeking no precise amount he may have wanted to leave the jury unfettered to award a large sum. This action does not demonstrate the restraint he suggests. Therefore, the first factor weighs in favor of no fees.

2.

The second factor requires us to consider the "general legal importance" of the issue underlying the plaintiff's victory. *Mercer*, 401 F.3d at 206. *Mercer*, for example, focused on the fact that the plaintiff there established a novel legal principle, which would "serve as guidance for other schools facing the issue." *Id.*; *see also id.* at 207 ("[T]he facts as found by the jury gave rise to a first-of-its-kind liability determination."). Several other circuits to consider the question have likewise focused on whether the plaintiff's victory altered the legal landscape. *See, e.g.*, *Gray ex rel. Alexander v. Bostic*, 720 F.3d 887, 896 (11th Cir. 2013).[2]

Here, the jury's verdict did not alter the legal landscape. The case broke no new ground and the jury's fact-specific finding can hardly serve to advance Fourth Amendment jurisprudence. It is true, as Kane argues, that the Supreme Court has

---

[2] We note that some circuits have adopted a broader understanding of this factor, which does not require the plaintiff's victory to have any broader legal significance. Instead, they have reduced the second factor to the importance of the underlying right asserted. See, *e.g.*, *Mahach-Watkins v. Depee*, 593 F.3d 1054, 1061–62 (9th Cir. 2010) ("We have difficulty imagining a more important issue than the legality of state-sanctioned force resulting in death."). But such an approach renders the second factor meaningless. Namely, if the second factor rests only on the importance of the vindicated right--and not any broader legal significance of the plaintiff's victory--then it either always weighs in favor of fees (since all federal civil rights are presumably important) or it requires treating some civil rights as more important than others, with no discernable method to do so.

8

recognized that the knock-and-announce requirement serves important interests that are furthered by the availability of attorney's fees under § 1988. *See* Appellee's Br. at 19–20 (discussing *Hudson v. Michigan*, 547 U.S. 586 (2006)). For example, in *Hudson*, the Court stated that the knock-and-announce requirement serves to protect people and property. But in declining to adopt an exclusionary rule for its violation, the Court underscored that "[m]assive deterrence is hardly required" where police have such little incentive to violate the requirement. *Hudson*, 547 U.S. at 596. And, even in the absence of an exclusionary rule, the Court noted that civil suits under § 1983, with the availability of attorney's fees under § 1988, can serve a deterrent role. *See id.* at 598. The Court did not, however, suggest that attorney's fees were a mandatory remedy for knock-and-announce violations. Nor did the Court suggest that its recognition of the availability of attorney's fees in actions alleging violations of the knock-and-announce rule somehow affected its conclusion in *Farrar*.

In short, *Hudson* does not alter our analysis. We recognize that even though its verdict was ambiguous, the jury here determined that the officers violated Cornish's constitutional right, which is no doubt significant. And we note the tension *Hudson* created with *Farrar* by emphasizing that fee awards can help deter knock-and-announce violations, which may not often produce more than nominal damages. *Hudson*, however, merely recognizes that attorney's fees are available for knock-and-announce violations; *Farrar*--and our decision in *Mercer*--guide our inquiry into whether a particular nominal-damages award merits those fees. Unfortunately for Kane, the facts here fall squarely

9

within the *Farrar/Mercer* framework. Therefore, because Kane's victory bears no broader legal significance, the second factor militates against a fee award.

3.

The third and final factor we evaluate considers "whether the litigation served a public purpose, as opposed to simply vindicating the plaintiff's individual rights." *Mercer*, 401 F.3d at 207.[3] One way for the victory to advance the public interest is deterring similar misconduct in the future. *Bostic*, 720 F.3d at 897.[4]

---

[3] As with the second factor, our sister circuits have developed differing views on how broadly or narrowly to view the public purpose. On the broad reading, "a public goal is accomplished if the plaintiff's victory encourages attorneys to represent civil rights litigants, affirms an important right, puts the defendant on notice that it needs to improve, and/or provokes a change in the defendant's conduct." *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1232 (10th Cir. 2001) (collecting cases). The narrower reading requires more, mindful that "not every tangential ramification of civil rights litigation ipso facto confers a benefit on society." *Pino v. Locascio*, 101 F.3d 235, 239 (2d Cir. 1996). Courts taking the narrow approach have often looked to whether the plaintiff obtained injunctive relief or punitive damages as a sign that the suit served the public good. *See, e.g.*, *Cartwright v. Stamper*, 7 F.3d 106, 109 (7th Cir. 1993); *Bostic*, 720 F.3d at 899. We note here that Kane secured no punitive damages or injunctive relief.

[4] Contrary to the district court's invocation of deterrence as a rationale for awarding fees, this factor concerns the deterrent effect *of the legal victory*, not whether the fee award would itself deter. *See Farrar*, 506 U.S. at 121–22 (O'Connor, J., concurring); *cf. Cartwright*, 7 F.3d at 110. In *Bostic*, the Eleventh Circuit confronted a situation where, as here, "the district court actually used attorney's fees as the deterrent." 720 F.3d at 899. This approach reverses the relevant inquiry, which calls for the court to assess the legal victory itself to determine whether fees are appropriate, not "award attorney's fees in order to enhance the magnitude of a plaintiff's victory." *Id.* If the victory does not deter misconduct on its own, then district courts cannot award fees to bootstrap the justification for awarding fees.

Here, Kane's victory serves the salutary goal of holding police accountable, but Kane identifies no change in police practice or policy that would support the notion that this lawsuit benefitted the public more broadly. Unlike *Mercer*, where the plaintiff's victory "serve[d] a significant public purpose, by furthering Title IX's goal of eliminating discrimination in educational institutions," we can discern no similarly far-reaching effects of Kane's victory. 401 F.3d at 207–08.

Nor can the jury's opaque verdict effectively deter future violations. The jury found that the officers failed to "properly" knock and announce, but the verdict does not specify what was improper--whether the officers failed to knock-and-announce at all or simply waited an insufficient time after doing so before entering the apartment. "Such a judgment cannot deter misconduct any more than a bolt of lightning can; its results might be devastating, but it teaches no valuable lesson because it carries no discernable meaning." *Farrar*, 506 U.S. at 122 (O'Connor, J., concurring). The third factor therefore also weighs against fees.

### III.

The district court abused its discretion by failing to evaluate the three factors this court has adopted for determining whether a nominal-damages award warrants attorney's fees. But, having reviewed the record, rather than remand for the district court to do what it failed to do the first time, we are convinced that the best course of action is to vacate the fee award and direct the district court to enter an order awarding Kane zero dollars in

11

attorney's fees, exclusive of costs.[5] *See, e.g.*, *McAfee v. Boczar*, 738 F.3d 81, 95 (4th Cir. 2013), *as amended* (Jan. 23, 2014).

VACATED AND REMANDED WITH INSTRUCTIONS

---

[5] Because we hold that no fees are warranted, we need not address Kane's cross-appeal that the district court improperly calculated his fee award.